*646 OPINION OF THE COURT
Titone, J.
Labor Law § 240 (1) and § 241, which impose certain nondelegable safety duties upon "contractors^] owners and their agents,” specifically exempt "owners of one and two-family dwellings who contract for but do not direct or control the work.” In this appeal, we are asked to consider the scope of this exemption and, in particular, the degree to which it is available when the work relates to property used for both residential and commercial purposes. We hold that, under the circumstances of this case, where the commercial activities were housed in structures that were completely separate from the owner’s dwelling place and the work was unrelated to the commercial structures, an owner who has not directed or controlled the work may invoke the exemption.
Defendant Albert Putnam owns a 33-acre parcel in the Town of Hamburg, New York. The property contains several structures, including defendant’s home, two barns, a chicken house, a milk house and a second one-family dwelling occupied by defendant’s daughter and son-in-law, David Harrington. At the time the events in issue took place, one of the barns was leased to defendant’s business, B & B Supermarkets, Inc. (B & B), and used to store some of the business’s equipment, including shopping carts and tables. The other barn on the property was used to store a high-loader tractor owned by B & B, as well as some of defendant’s personal equipment and supplies for Harrington’s plumbing business.
In 1981, defendant decided to have a free-standing floodlight *647 installed on the property to illuminate his front yard and its two artificial ponds. He retained Harrington to do the necessary preliminary work, including painting the light standard that defendant had selected, digging a trench for electrical wiring from the house to the spot where the light standard was to be erected, and pouring a foundation for eventual use in the erection of the standard. Harrington, in turn, hired plaintiff to assist him.
On October 8, 1981, while Harrington and plaintiff Robert Cannon were attempting to thread electrical cable through the light standard’s hollow center, the standard, which was being supported by a bucket chained to defendant’s high-lift tractor, broke loose and fell on Cannon, allegedly causing him to sustain severe physical injury. Although he had personally participated in some of the preparatory work, defendant was not present, and was in fact in Florida, at the time that this accident occurred.
Plaintiffs commenced the present action against defendant alleging causes of action based on common-law negligence and Labor Law § 200, as well as Labor Law § 240 (1) and § 241. After serving an answer, defendant moved for summary judgment dismissing the Labor Law § 240 (1) and § 241 causes of action, asserting as a "defense” that, as an owner of a one- or two-family dwelling, he was exempt from the duties imposed by those statutes. Plaintiffs, in turn, cross-moved for partial summary judgment dismissing this "defense” on the ground that the exemption was unavailable to defendant either because of his commercial use of some of the structures on the property or because of his "direction” and/or "control” over the project. After hearing oral argument on the motion, the Supreme Court decided to hold an immediate trial to determine the fact questions relating to defendant’s entitlement to invoke the statutory dwelling-owner exemption (see, CPLR 3212 [c]).
After considering the evidence introduced at the evidentiary hearing,[1] the court rejected plaintiffs’ arguments, held that the dwelling-owner exemption from Labor Law § 240 (1) and § 241 liability was applicable and dismissed the causes of *648 action based on those statutes. The court found that "there is no evidence of any regular commercial activity which would remove this matter from the Labor Law exceptions,” since the purported commercial uses of the property were "merely incidental.” Further, there was "no substantial relationship between the light standard being erected and any commercial purpose at the premises.” With respect to plaintiffs’ contention that defendant had exercised sufficient "direction” or "control” to render him ineligible for the exemption, the court found that "while defendant had directed where the light was to be placed, no further direction or control was made which would * * * invoke §§ 240 and 241.” The court’s order was affirmed by the Appellate Division "for reasons stated at Special Term.” (143 AD2d 518.)[2] Thereafter, Supreme Court dismissed the remaining causes of action on the basis of plaintiffs’ stipulation discontinuing them. We then granted plaintiffs leave to appeal from the final judgment dismissing their complaint, thereby bringing up for review the prior nonfinal Appellate Division order (see, CPLR 5602 [a] [1] [ii]).
Before the 1980 amendments establishing the dwelling-owner exemption were adopted, Labor Law § 240 (1) provided that "all contractors and owners and their agents” must provide "scaffolding, hoists, stays, ladders * * * and other devices” that are "constructed, placed and operated as to give proper protection” to workers employed in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure.” Similarly, Labor Law § 241, which applies to the "construction], demolition] * * * or excavation]” of buildings, required "[a]ll contractors and owners and their agents” to comply with certain statutorily and administratively prescribed safety standards.
In Allen v Cloutier Constr. Corp. (44 NY2d 290, 297-300), this Court traced the "somewhat checkered history” of the latter statute and concluded that its first six subdivisions imposed nondelegable duties upon building owners. Consequently, owners could be held liable for injuries proximately caused by violations of these subdivisions without regard to whether they controlled or directed the work (id., at 300; see, Long v Forest-Fehlhaber, 55 NY2d 154, 159-160). In a subse *649 quent decision, Haimes v New York Tel. Co. (46 NY2d 132, 136), the Court reached the same conclusion about Labor Law § 240 (1), holding that the duties imposed on owners by that statute were not "conditioned on [their] control and supervision” of the work. In so ruling, the Court relied on the apparent legislative policy determination that "over-all compliance with safety standards would [best] be achieved by placing primary and inescapable responsibility on owners and general contractors rather than on their subcontractors” because of the former’s greater interest in the project and often superior economic position (46 NY2d, at 137). While recognizing that "in many instances the circumstances may be just the opposite” and noting, as an example, that "[t]he owner of a one-family dwelling * * * may be in a less dominant position than the particular subcontractor he engages,” the Court stressed that the creation of exceptions to the basic statutory design was strictly "a matter for the exercise of the Legislature’s judgment” (id., at 137-138).
It was against this backdrop that the Legislature adopted the 1980 amendments to Labor Law § 240 (1) and § 241, which specifically excepted "owners of one and two-family dwellings who contract for but do not direct or control the work” from the duties imposed by those statutes (L 1980, ch 670, §§ 1-4). The amendments were recommended by the Law Revision Commission, which cited this Court’s decision in Haimes v New York Tel. Co. (supra) and stated its belief that the strict liability imposed by the statutes "should not apply to owners of one and two family homes who are not in a position to know about, or provide for the responsibilities of absolute liability” (Recommendation of NY Law Rev Commn, reprinted in 1980 McKinney’s Session Laws of NY, at 1658). The Commission report notes that such owners "cannot be expected to be in a position, as respects the work, which is dominant over that of the person doing the work” (id., at 1660). In short, the resulting amendments were thus intended to create an exception to the liability imposed by Labor Law § 240 (1) and § 241 so that the law would be fairer and would more nearly reflect the practical realities governing the relationship between homeowners and the individuals they hire to perform construction work on their homes (see, Mem of NY Law Rev Commn, Bill Jacket, L 1980, ch 670, reprinted in 1980 McKinney’s Session Laws of NY, at 1657 ["(i)t is unrealistic to expect the owner of a one or two family dwelling to realize, under *650 stand and insure against the responsibility sections 240 and 241 now place upon him”]).
The Legislature’s concern for fairness and practicality is a sound starting place for our own analysis of how the amendments should be applied. Plaintiffs would have us withhold the dwelling-owner exemption from this defendant because part of the property on which the injury occurred was used for commercial, as well as residential, purposes. However, that approach would unduly restrict the availability of the exemption and not be in accord with the Legislature’s apparent intent.
Having considered all aspects of the case and the governing principles, we conclude that the existence of both residential and commercial uses on a property does not automatically disqualify a dwelling owner from invoking the exemption. Instead, whether the exemption is available to an owner in a particular case turns on the site and purpose of the work. Such a test comports with the underlying notions of reasonableness and fairness that motivated the Legislature’s adoption of the dwelling-owner exemption. A homeowner who hires someone to paint his own living-room ceiling should be afforded the benefit of the statutory exemption from liability even if he also maintains a business on the property. In terms of the legislative purpose, such a homeowner is no more or less likely to "know about, or provide for the responsibilities of absolute liability” for home-improvement-related injuries than is a similarly situated homeowner who happens to conduct a business on a separate parcel of land (Recommendation of NY Law Rev Commn, op. cit., at 1658).
In this case, placing the analytical focus on the site and purpose of the work leads to the inevitable conclusion that the dwelling-owner exemption was properly held applicable. Although the worksite was not located in or on the dwelling structure itself but rather was an outdoor area to which all of the structures on the property had access, the uncontradicted evidence established that the project had been undertaken solely in connection with defendant’s residential use of the property. The only direct evidence of defendant’s purpose in installing the outdoor lighting fixture was his own deposition testimony that he wanted to illuminate his front yard and the two artificially created ponds on the property for aesthetic reasons. Further, the conclusion that aesthetics were defendant’s only real concern is supported by the testimony that *651 the site and direction of the new light standard were specifically selected to highlight the property’s landscaping and to enhance its dramatic effect. Finally, a project to beautify the appearance of the front yard of defendant’s home could not reasonably be said to have any practical value in connection with the arguably commercial uses of the other structures on the property — i.e., storage of business equipment.
Thus, the conclusion is inescapable that the project was purely and simply a home improvement measure, notwithstanding that the work may have fortuitously affected another area of the property that was used for commercial activities. Under such circumstances, the remedial purposes and protective goals underlying the 1980 amendments to Labor Law § 240 (1) and § 241 are best served by extending the dwelling-owner exemption to defendant’s situation.
As to plaintiffs’ alternative contention, there was plainly support in the hearing record for the trial court’s finding that defendant’s participation in some of the preliminary stages of the project did not rise to the level of "direction] or control [of] the work” within the meaning of the statutes. Since that finding has now been affirmed by the Appellate Division, the question is beyond our Court’s power to review (see, e.g., Smirlock Realty Corp. v Title Guar. Co., 63 NY2d 955). Defendant may thus fairly be characterized as an "owner[ ] of [a] one [or] two-family dwelling[ ] who contracted] for but d[id] not direct or control the work,” and the courts below properly dismissed plaintiffs’ Labor Law § 240 (1) and § 241 causes of action against him.
Accordingly, the judgment of the Supreme Court, and the order of the Appellate Division brought up for review, should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

. The parties agreed by stipulation to have the "hearing” held out of court’s presence. Under the agreed-upon procedure, the live testimony of both plaintiffs and of defendant Putnam was taken in the form of "depositions,” and the transcripts of the depositions were submitted to the court as "evidence,” along with the transcripts of the parties’ examinations before trial, several photographs and a survey map of defendant’s property.

. We dismissed plaintiffs’ motion for leave to appeal from this Appellate Division order on the ground that the order did not finally determine the action within the meaning of the Constitution (Cannon v Putnam, 73 NY2d 994).