Terry A. MULLEN and Gail P. Mullen, Plaintiffs,

v.

Bayard KELLAM, Individually and as Executor of Margaret Rives Kellam, Defendant.

No. 92–CV–544.

United States District Court, N.D. New York.

April 29, 1993.

Steven M. Melley, Rhinebeck, NY, for plaintiffs.

Michael P. Hunt, Albany, NY, for defendant.

### MEMORANDUM—DECISION and ORDER

HURD, United States Magistrate Judge.

Plaintiffs move for an order from this court granting them partial summary judgment on the issue of liability upon the defendant pursuant to Section 240 of the N.Y.S. Labor Law. Defendant cross-moves for summary judgment on the basis that he is exempt from any absolute liability as contained in Section 240(1). Defendant also moves to dismiss plaintiffs' Section 200 and common law negligence claims due to a lack of proof of the "direction and control" necessary to impose liability.

### FACTS

The basic facts on the issues of liability are not in dispute. The plaintiff, Terry A. Mullen, who operates a business called Four Corners Painting, was hired by Randall Perham ("Perham"). Perham contracted with the defendant to stain the buildings located on defendant's property known as Twinbrook Farm ("Farm"), in East Chatham, New York.[1] The Farm, which defendant does not operate as a commercial farm, is a parcel of land consisting of 259 acres, upon which there are four buildings; an eight room primary dwelling, a cottage, an equipment shed, and a barn/silo complex. The barn/silo complex is separated from the primary dwelling by a distance of approximately 75 yards, with the cottage set between the two buildings.

In the spring of 1991, the defendant and Perham negotiated an agreement whereby Perham would stain the cottage, equipment shed, and the barn/silo complex for $13,080.00. The price to stain the barn/silo complex alone was $8,000.00. The initial offer from Perham was $4,000.00 higher, but when defendant stated he could not afford that price, Perham responded that he could bor-

---

**1.** Defendant, who is a school teacher, received the farm by devise through his father's estate. His parents had operated Twinbrook as a dairy farm.

row scaffolding from a friend, thus avoiding the rental price for the scaffolding. On October 25, 1991, plaintiff was working on a scaffold erected and standing next to the silo portion of the barn/silo complex, painting the silo when the scaffold collapsed and toppled over, causing injuries to the plaintiff.[2] At the time of the accident, plaintiff was standing on a ladder which was owned by defendant and used by Perham with defendant's permission, atop the four-section scaffolding apparatus.[3]

The silo portion of the barn/silo complex consists of four floors as living quarters, and at the time of the accident, was occupied by a tenant, Richard Miller ("Miller"). The silo had been rented by Miller from about October 1981, through February 1992, per an oral agreement; 1991 rent was $250.00 per month. At no time was the barn/silo complex ever occupied by the defendant or any member of his family, nor was the barn portion otherwise occupied as a dwelling.

### MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living Pub. Company*, 949 F.2d 576, 580 (2d Cir.1991). Therefore, "[s]ummary judgment will not lie if the dis-

pute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang*, 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby*, at 248, 106 S.Ct. at 2510, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Insurance Company*, 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied*, —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The judge's role is "[t]o determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510. In a case where both sides have moved for summary judgment, as is the case at bar, each side must sustain its burden of proving the absence of disputed issues of material fact in order to be successful. As noted above, the liability facts with respect to Sections 240(1) & 200 and common law negligence are not in dispute, so the question is whether those facts create an issue which must be decided by a jury.

---

**2.** There was one other worker on the scaffolding when it collapsed, a Dario Oroszco. There is no indication whether, or to what extent, he was injured.

**3.** Each section of the scaffold was four feet wide, six feet long and six feet high; a platform was created on sections two and three by two $2'' \times 10''$ planks which were not secured to the scaffold. At the base of the scaffold two $2'' \times 10''$ plank wood sills were added for stability.

## DISCUSSION

### SECTION 240

Section 240(1), (2) & (3) of the New York State Labor Law provide that:

(1) All contractors and owners and their agents, **except owners of one and two family dwellings who contract for, but do not direct or control the work,** in the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed. (emphasis added).

(2) Scaffolding or staging more than twenty feet from the ground or floor ... or erected with stationary supports, except scaffolding wholly within the interior of a building and covering the entire floor space of any room therein, shall have a safety rail of suitable material properly attached, bolted, braced, or otherwise secured, rising at least thirty-four inches above the floor or main portions of such scaffolding or staging and extending along the entire length of the outside and the ends thereof, with only such openings as may be necessary for the delivery of materials. Such scaffolding or staging shall be so fastened as to prevent it from swaying from the building or structure.

(3) All scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon when in use.

Plaintiff, Terry A. Mullen, claims that this section imposes absolute liability on the defendant for his injuries. On the other hand, defendant claims that he is exempt from liability because the work was being performed for a noncommercial purpose, and that the improvements performed on all the structures of the Farm showed a pattern of upgrading the entire property regardless of the nature of the use of each structure.

Section 240(1) of the Labor Law requires contractors and owners to furnish or erect suitable devices to protect workers when work is being performed on a building or structure. Liability against the landowner under Section 240(1), in contrast to Labor Law § 200 is absolute and does not require notice of a defect nor the exercise of supervisory control by the owner (*see Zimmer v. Chemung County Performing Arts*, 65 N.Y.2d 513, 523, 493 N.Y.S.2d 102, 482 N.E.2d 898).

*Lombardi v. Stout*, 80 N.Y.2d 290, 295, 590 N.Y.S.2d 55, 57–58, 604 N.E.2d 117, 119–20 (1992) (footnote omitted).

The barn/silo complex is obviously a building, and because the plaintiff was working on scaffolding at the time of the accident, Section 240(1) on its face imposes absolute liability upon the defendant. Since the plaintiff's negligence, if any, is immaterial, *Rocovich v. Consolidated Edison Company*, 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 221, 583 N.E.2d 932, 934 (1991); *Bland v. Manocherian*, 66 N.Y.2d 452, 459–61, 497 N.Y.S.2d 880, 883, 488 N.E.2d 810, 813 (1985), the only way the defendant can avoid responsibility for plaintiff's alleged injuries is if he is exempt under the statute. If so, he is entitled to a dismissal of the Section 240 claim. If not, the plaintiffs are entitled to judgment on liability.

The courts in New York have developed four tests to determine the applicability of the exemption in Section 240(1) in any given situation. The exemption provided in this section exempts owners of one and two family dwellings who contract for, but do not direct or control, work to be performed on a building or structure which they own.

The first test was set forth in *Cannon v. Putnam*, 76 N.Y.2d 644, 563 N.Y.S.2d 16, 564 N.E.2d 626 (1990). In *Cannon*, "the defendant decided to have a free standing floodlight installed on his property to illuminate his front yard and its two artificial ponds." *Cannon*, 76 N.Y.2d at 646–47, 563 N.Y.S.2d at 17, 564 N.E.2d at 627. The real property owned by defendant was used for both residential and commercial purposes, including the defendant's home, two barns, a chicken house, a milk house, and a second one family dwelling occupied by defendant's daughter and her husband.

Defendant then retained his son-in-law, David Harrington, to install the floodlight. Mr. Harrington in turn hired plaintiff to assist him. Plaintiff was injured when he was attempting to thread electrical cable through the light standard's hollow center. The standard, which was being supported by a bucket chained to defendant's high lift tractor, broke loose and fell on Cannon, allegedly causing him to sustain severe physical injuries.

The Court of Appeals found that installing the outdoor light fixture was taken *solely* in connection with defendant's residential use of the property, notwithstanding that the work may have fortuitously affected another area of the property that was used for commercial activities. Therefore, the court examined the "site" (or location of the construction) and the "purpose" for which the construction was performed. The court held that the site was a neutral site on the grounds, attached to neither the residential or the commercial property. It found that the purpose of the light fixture was to illuminate defendant's front yard and his two artificial ponds. Therefore, the Court of Appeals held that the owner was entitled to invoke the exemption of Section 240(1).

The second test used by New York courts is the "use and sophistication" test, as set forth in *Pigott v. Church of the Holy Infancy,* 179 A.D.2d 161, 583 N.Y.S.2d 534 (3rd Dep't 1992), *appeal denied* 80 N.Y.2d 759, 589 N.Y.S.2d 309, 602 N.E.2d 1125 (1992). In *Pigott,* the defendant, a religious corporation, was the owner of a complex of buildings located on a single parcel of land in the Town of Lake Luzerne, New York. The complex consisted of a church, parish home, church hall, barn, and parking lot. Plaintiff was injured when he fell from the roof of the parish home on which he was performing roof reconstruction. The Third Department noted that when the owner does not occupy the dwelling for residential purposes, "the analysis focuses upon the *use* to which the structure is put and the *sophistication* of the owner, i.e. whether the owner had the requisite degree of business acumen to recognize the need to insure against the potential liabil-

ity imposed by those statutes." *Id.,* at 163, 583 N.Y.S.2d at 535.

Therefore, if the dwelling is used exclusively for commercial purposes, and the owner is, or should be, sophisticated enough to insure against the risk, the exception is inapplicable. The *Pigott* court held that the parish home was used exclusively as the personal residence for the priest serving the parish. In addition, the court noted that the dwelling was not commercial in nature because the defendant neither conducted business from the parish home, nor derived any financial gain therefrom. Finally, the court observed that although the parishioners derived some benefit from the presence of the clergy on the grounds of the church, any business gain was too insignificant to transform the use of the parish home into a commercial enterprise.

The third test derives from *Van Amerogen v. Donnini,* 78 N.Y.2d 880, 573 N.Y.S.2d 443, 577 N.E.2d 1035 (1991). This test is the "entirely and solely" test. In *Van Amerogen,* the defendants owned a house in Troy, New York, which had always been used for rental property. The court held that the defendants were not entitled to the exemption because the house was used entirely and solely for commercial purposes as income producing property. The defendants had always rented the house to college students. In addition, the court found that the defendants were not lacking in sophistication or business acumen so that they would fail to recognize the necessity to insure against the strict liability imposed by the statute.

The final test derived from *Zahn v. Pauker,* 107 A.D.2d 118, 486 N.Y.S.2d 422 (3rd Dep't 1985), applies when the same dwelling is used both as a residence and as a commercial venture. In *Zahn,* the dwelling was used both as a residence for the husband and wife and as a doctor's office for the husband. The court held that the exemption from strict liability was involuntarily waived because the dwelling was not used "solely" for residential purposes and did derive a commercial use.

■ The facts at bar more closely resemble the tests set forth in *Pigott* or *Van Amerogen.* This is so because the barn/silo complex was used for some commercial use,

and arguably as well as residential use. *Cannon* would apply only if the work performed on the dwelling or on the real property was unrelated to the commercial structure. Clearly, in this situation the staining of the silo portion of the complex was not completely unrelated to the commercial structure, although the motive in staining the silo, according to the defendants, was merely to improve the looks of the overall property. *Zahn* does not apply because the defendant did not use the barn/silo complex for his own residence as well as any commercial use. In *Zahn*, the defendants actually resided in the dwelling. Here, although a tenant did reside in the silo, it was never occupied by the owner of the property or any of his family. Therefore, the court will first examine the "use and sophistication" test as set forth in *Pigott*.

■ As stated by the court in *Pigott*, the analysis focuses upon the use to which the structure is put, and the business sophistication of the owner. Defendant claims that he is entitled to the exemption under New York State Labor Law § 240(1) because the use of the property was never exclusively for commercial purposes; he argues that the barn portion of the barn/silo complex is used to store personal equipment. However, "an owner's use of the property is commercial in nature … when it is held as a business asset, i.e., used by the owner in furtherance of the enterprise whose purpose is the derivation of financial and business gain." *Pigott*, 179 A.D.2d at 163–64, 583 N.Y.S.2d at 535.

> The exemption was enacted to protect those people who, lacking business sophistication, would not know or anticipate the need to obtain insurance to cover them against liability imposed under § 240(1). It was not intended to insulate from liability owners who use their one or two family houses purely for commercial purposes. In those circumstances, the houses are more accurately considered as commercial enterprises than as one or two family houses … The exception is not applicable if the defendant's purpose in making renova-

tions was to prepare the house for commercial rental.

*Lombardi*, 80 N.Y.2d at 297, 590 N.Y.S.2d at 58–59, 604 N.E.2d at 120–21.

On the facts as before the court, the use of the silo in the past, up to and including the time of the accident, had been exclusively for rental income; and even before that as part of defendant's parents' dairy farm, both uses being commercial. In 1981, Miller moved into the silo and resided there at least on a full time basis, for nearly ten years, and then for the last year, on a part time basis. The defendant's family originally rented to Miller with the understanding that he would work on the interior of the silo in exchange for a rent free residence. On the other hand, the barn portion of the barn/silo complex was used for storing personal property of the defendant. The barn portion was never used, at least under defendant Bayard Kellam's ownership, as a farm for the derivation of financial gain. The barn was never occupied by anyone, including the defendant. In other words, the barn portion of the complex was never occupied as a dwelling. It is significant to note that the defendant Bayard Kellam treated the barn as income producing rental property on his 1989, '90, and '91 income taxes which demonstrates that its use was a commercial venture and not a residential building. In addition, the maintenance of a commercial rental property by painting, staining, and maintaining the grounds was not incidental to the commercial use of that portion of the property. Finally, although defendant does store some personal equipment in the barn, that use is merely incidental to the primary use of the barn/silo complex, that is, as a commercial venture. *Pigott*, 179 A.D.2d at 163, 583 N.Y.S.2d at 535 ("[T]he relevant focus is upon the *objective* use to which the *dwelling* is put, not upon how the use is characterized from the owner's perspective.") (emphasis added).

As to the sophistication part of the test, plaintiffs claim that defendant's level of education, his choice of the proposal to use the less expensive scaffolding, and his ownership of at least two rental units [4] on his parcel of

---

4. The cottage, which is located between the de-   fendant's primary dwelling and the barn/silo

realty does not place him in a class of persons the legislature sought to exempt from the absolute liability provisions of Labor Law §§ 240 and 241. Plaintiffs also claim that since it is defendant's burden to prove entitlement to the exemption, *Lombardi,* 80 N.Y.2d at 297, 590 N.Y.S.2d at 58–59, 604 N.E.2d at 120–21, there is no proof that the defendant lacks the business sophistication to the extent necessary to avoid liability. Defendant, on the other hand, argues that he does lack the business sophistication necessary to avoid liability. Defendant argues that he did not purchase this land as an investment; rather he became the owner of the land in question as the result of a devise, and that the tenants "came with the land," i.e., defendant's parents had leased to the tenants. He claims that he is only an English teacher and has no prior experience in contracting or construction. In addition, while he did negotiate an agreement with Perham, defendant maintains, and the evidence shows, that he clearly did not direct or control the work. Subsequent to his devise, his family resided in the primary dwelling as a permanent residence. During that time, the barn/silo complex was not only a residence used by Miller, but also served as a storage area for the equipment and tools used by a normal homeowner.

The court finds that the facts demonstrate that the defendant possessed the requisite business sophistication to impose absolute liability. The defendant rented to two different tenants on his property and had done so for at least one and one-half years prior to the accident. In addition, defendant declared the barn/silo complex as income producing property on his tax forms.[5] He apparently was aware of the advantages of a commercial venture. Defendant now must shoulder its disadvantage, namely absolute liability for injuries to those persons hired to improve his commercial property. Moreover, if defendant felt that he was unable to assume the responsibility of a landlord-tenant relationship, he could have unilaterally severed both by giving proper notice to the tenants.

The second analysis, the "entirely and solely" test established by the New York Court of Appeals in *Van Amerogen,* held that in order for absolute liability to attach, the property must be used exclusively for commercial purposes as income producing property. Defendant claims that the evidence clearly establishes that the barn and silo were a connected structure openly accessible from inside, and that the barn/silo complex was used by him for residential purposes in that he stored personal items there as well as for commercial uses. Therefore, he claims that the entirely and solely test has been destroyed by his residential use of the barn/silo complex.

■ However, as stated *supra,* the barn/silo complex was used exclusively for commercial purposes. Any residential use of the barn portion of the complex, i.e., to store personal equipment, was incidental to the primary use of the barn/silo complex, which was to generate income. Moreover, even before the tenant moved into the silo, defendant's parents used the complex as an integral part of their dairy farm business. As a result, plaintiffs' motion to impose absolute liability upon the defendant pursuant to Section 240 is granted.[6]

### SECTION 200 AND COMMON LAW NEGLIGENCE

■ Section 200 codifies the common law standard of negligence upon owners to protect the health and safety of their employees.

---

complex, is rented to a neighbor, Harvey Goldschmidt.

5. Defendant claimed rental income from the barn and cottage of $7,940 in 1989; $9,630 in 1990; and $7,500 in 1991.

6. Defendant also seeks to dismiss plaintiffs' claim pursuant to Section 241(6) of the N.Y.S. Labor Law. However, unlike Section 240, Section 241(6) "requires a [factual] determination of whether the safety measures actually employed on a job site were 'reasonable and adequate.' "

*Kenny v. Fuller Co.,* 87 A.D.2d 183, 186, 450 N.Y.S.2d 551, 554 (2d Dep't 1982), *appeal denied,* 58 N.Y.2d 603, 459 N.Y.S.2d 1026, 445 N.E.2d 218 (1982). In addition, the "culpable conduct of the injured person is [a] relevant" inquiry under Section 241(6). *Rocovich,* 78 N.Y.2d at 512, 577 N.Y.S.2d at 220, 583 N.E.2d at 933. Therefore, dismissal of plaintiffs' claim pursuant to Section 241(6) would require factual determinations not appropriate on a summary judgment motion.

All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons....

N.Y.S. Labor Law § 200(1). "An implicit precondition to this duty to provide a safe place to work is that the party charged with that responsibility have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 317, 445 N.Y.S.2d 127, 129, 429 N.E.2d 805, 807 (1981). In addition, "[i]t is settled law that where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Section 200 of the Labor Law." *Lombardi*, 80 N.Y.2d at 295, 590 N.Y.S.2d at 57, 604 N.E.2d at 119. Therefore, liability under Section 200 will attach only when the accident occurred due to a condition of the premises, as opposed to the manner in which the work was performed; *and* the owner exercised supervision or control over the work; or the owner had actual or constructive notice of the defective condition.

■ The evidence clearly demonstrates that the defendant did not control or supervise plaintiff's work, and he was not aware of any defective condition on the scaffolding; nor is it alleged that any condition on the barn/silo complex caused the accident. Therefore, defendant's motion to dismiss plaintiffs' Labor Law Section 200 and common law negligence claims is granted.

### CONCLUSION

Therefore, this court finds that the defendant is not entitled to be exempt for the absolute liability imposed by Section 240(1) of the N.Y.S. Labor Law. Defendant has always used the barn/silo complex entirely and solely for commercial purposes and he possesses sufficient business acumen to impose such liability. He is "quite unlike '[the] homeowner who hires someone to paint his own living room ceiling [who should be accorded the statutory exemption from strict liability]' and not within the class of persons the Legislature sought to exempt from the strict liability provisions of Labor Law §§ 240 and 241." *Van Amerogen*, 78 N.Y.2d at 883, 573 N.Y.S.2d at 445, 577 N.E.2d at 1037. Finally, such a determination places the "ultimate responsibility for safety practices ... where such responsibility belongs, on the owner." *Id.*, at 882, 573 N.Y.S.2d at 444, 577 N.E.2d at 1036 (citations omitted).

Accordingly, it is, ORDERED, that:

1. Plaintiffs' motion for partial summary judgment is granted;

2. Plaintiffs are granted summary judgment on the issue of liability pursuant to Section 240 of the Labor Law;

3. Defendant's cross-motion for summary judgment is granted in part and denied in part;

4. Defendant is granted summary judgment dismissing plaintiffs' common law negligence and Section 200 of the Labor Law claims; and

5. The remainder of defendant's motion is denied.

IT IS SO ORDERED.