[881 NE2d 204, 851 NYS2d 108]

Louis S. Ederer, Respondent, v Steven R. Gursky et al., Appellants.

Argued November 15, 2007; decided December 20, 2007

## POINTS OF COUNSEL

*Dreier LLP,* New York City (*Ira S. Sacks, Mark S. Lafayette* and *Melanie J. Sacks* of counsel), for appellants. I. The order eviscerates the law of limited liability. (*Dawson v White & Case,* 88 NY2d 666; *Lewis v Rosenfeld,* 138 F Supp 2d 466; *We're Assoc. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148; *Schuman v Gallet, Dreyer & Berkey,* 180 Misc 2d 485, 280 AD2d 310; *431 Conklin Corp. v Rice,* 181 AD2d 716; *Matter of Whitley v Klauber,* 51 NY2d 555; *Lichtman v Estrin,* 282 AD2d 326; *Connell v Hayden,* 83 AD2d 30; *Schnapp, Hochberg & Sommers v Nislow,* 106 Misc 2d 194; *Brito v DILP Corp.,* 282 AD2d 320.) II. The order failed to properly distinguish between the duty to account and personal liability for debts disclosed by the accounting. (*Dawson v White & Case,* 88 NY2d 666.) III. The order improperly held that the individual LLP partners may be personally liable for contractual debts of the LLP. (*Lewis v Rosenfeld,* 138 F Supp 2d 466; *Regency Found. v Robson,* 14 Misc 3d 1209[A], 2006 NY Slip Op 52464[U]; *Mantell v Samuelson,* 4 Misc 3d 134[A], 2004 NY Slip Op 50765[U]; *Matter of Joachim v Flanzig,* 3 Misc 3d 371; *Institute of Physical Medicine & Rehabilitation v Country-Wide Ins. Co.,* 193 Misc 2d 803; *F & M Precise Metals, Inc. v Goodman,* 4 Misc 3d 1023; *We're Assoc. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148; *Lichtman v Estrin,* 282 AD2d 326; *Schnapp, Hochberg & Sommers v Nislow,* 106 Misc 2d 194; *Polymer Trading v CIC-Union Europeenne et Cie,* 225 AD2d 482.)

*Cowan, Liebowitz & Latman, P.C.,* New York City (*J. Christopher Jensen* and *Maryann Penney* of counsel), for respondent. Defendants-appellants are not shielded by Partnership Law § 26 (b) from their fiduciary duty to account to a withdrawing partner for his interest in the partnership. (*Karrick v Hannaman,* 168 US 328; *Dawson v White & Case,* 88 NY2d 666; *Shubert v Lawrence,* 27 AD2d 292; *Adam v Cutner & Rathkofp,* 238 AD2d 234; *Londin v Carro, Spanbock, Londin, Fass & Geller,* 124 Misc 2d 1013; *Mudge Rose Guthrie Alexander & Ferdon v Pickett,* 11 F Supp 2d 449; *We're Assoc. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148; *Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp.,* 2 NY3d 524; *Matter of Board of Educ. of City of N.Y. v Allen,* 6 NY2d 127; *Conolly v Thuillez,* 6 Misc 3d 1007[A], 2005 NY Slip Op 50003[U].)

**OPINION OF THE COURT**

READ, J.

This appeal calls upon us to explore the nature and scope of Partnership Law § 26 (b). We hold that this provision does not shield a general partner in a registered limited liability partnership from personal liability for breaches of the partnership's or partners' obligations to each other.

I.

The relationship that deteriorated into this acrimonious dispute began promisingly enough in 1998 when plaintiff Louis Ederer affiliated with the law firm of Gursky & Associates, P.C., which promptly changed its name to Gursky & Ederer, P.C. (the PC). Ederer joined the PC as a salaried, nonequity contract partner, but he had an understanding with defendant Steven R. Gursky, the PC's sole shareholder, that if their practice developed as anticipated, he would become a full equity partner in about two years' time.

Right on schedule, in May 2000 Gursky orally agreed to increase Ederer's annual compensation by about 17% and to make him a 30% shareholder in the PC as of July 1, the beginning of the PC's fiscal year. Ederer committed to purchase his 30% interest for $600,000, to be paid for by Gursky's taking an additional $150,000 from the PC's yearly distributions for each of the following four years.[1] Finally, Gursky agreed that when the PC took on additional partners, his 70% equity interest would be diluted up to 25% before Ederer's 30% interest was reduced.

In February 2001, the PC became a registered limited liability partnership known as Gursky & Ederer, LLP (the LLP). Significantly, there was no written partnership agreement. The LLP began billing all new legal services, while the PC billed and

---

1. We recognize that defendants strenuously deny that Ederer was ever a shareholder in the PC. They characterize the $600,000 as a payment to be made by Ederer in exchange for the right to receive 30% of the PC's profits as a bonus going forward, which was not in any way "attributable to goodwill associated with" the PC. For his part, Ederer has consistently taken the position that purchasing a 30% interest in the PC's future profits was effectively the same thing as purchasing an interest in all the PC's assets, "including most importantly" its goodwill. In any event, Supreme Court determined that Ederer, in fact, became a 30% equity shareholder in the PC in 2000. The Appellate Division affirmed Supreme Court without disturbing this factual finding, which, having support in the record, is beyond our review (see e.g. Cannon v Putnam, 76 NY2d 644, 651 [1990]).

collected work-in-process and preexisting accounts receivable, and loaned money to the LLP to fund its start-up. In July 2001, the LLP admitted three new partners, defendants Mitchell B. Stern, Martin Feinberg and Michael A. Levine. They collectively acquired a 15% interest in the LLP, leaving Gursky with a 55% interest while Ederer retained his 30% interest.

Ederer received his 30% share of the PC's profits for the fiscal years ending June 30, 2001 and June 30, 2002, less the $150,000 owed to Gursky each year. In 2002, both Ederer and Gursky loaned the PC a portion of their respective shares of the PC's profits. Sometime prior to June 30, 2003, the LLP assumed these loans in exchange for the furniture, fixtures and equipment that it acquired from the PC.

In July 2002, the LLP increased Ederer's annual compensation by about 28%. Gursky also agreed to forgive the remaining $300,000 owed by Ederer for the purchase of his 30% equity interest. Ederer characterizes this gesture as an acknowledgment of his major contributions to the firm's revenue growth; Gursky, as a concession made solely upon Ederer's assurances that he was committed to remaining with the LLP to assure its long-term success.

In June 2003, Ederer advised Gursky that he was withdrawing as a partner in the LLP and a shareholder in the PC. Ederer chalks up his decision to a severe falling out with Gursky in early 2003 over the representation of a firm client. Gursky retorts that Ederer left because the LLP was cash-strapped and unprofitable, and blames him in no small part for this purported state of affairs.

On June 26, 2003, Ederer entered into a withdrawal agreement with the PC and the LLP, which Gursky signed as president of the PC and a partner in the LLP. Under this agreement, Ederer agreed to remain a partner in the LLP so as to serve as lead counsel for a trial scheduled to commence in Georgia on June 30, 2003, although he was not obligated to delay his withdrawal from the LLP beyond July 8. In exchange, the LLP agreed to "continue to pay [Ederer his] regular draw and other compensation through the date of [his] withdrawal from the [LLP]"; to have files on which he was working transferred to his new firm upon the client's request; to give him the opportunity to review his clients' bills before the LLP asked for payment; and to allow him and/or his representatives (including accountants) access to the LLP's and PC's books and records after his withdrawal from the LLP.

The PC was dissolved on June 30, 2003, although formal dissolution papers were not filed with the Secretary of State until March 2004. Ederer withdrew from the LLP on or about July 4, 2003 after having helped secure a $2 million verdict in the Georgia trial, which generated a $600,000 contingency fee for the LLP. After Ederer's departure, the LLP continued in business under the name Gursky & Partners, LLP until March 1, 2005, when it ceased operations.

In December 2003, Ederer commenced this action against the PC, the LLP, Gursky & Partners, LLP, and Gursky, Stern, Feinberg and Levine, seeking an accounting and asserting breach of the withdrawal agreement. In his amended verified complaint dated November 1, 2005, Ederer sought an accounting of his interest in the PC (the first cause of action) and the LLP (the second cause of action), and asserted causes of action for breach of contract relating to Gursky's May 2000 oral agreement to pay him 30% of the PC's profits (the third cause of action), the June 2003 written agreement to pay him for the two weeks he tried the Georgia case for the LLP (the fourth cause of action), and the unpaid portion of his loan to the PC in 2002 (the fifth cause of action).

In their verified answer dated November 7, 2005, defendants denied the gravamen of Ederer's complaint; and interposed numerous affirmative defenses as well as counterclaims sounding in breach of fiduciary duty, conversion, tortious interference with contractual relations, fraud and deceit and fraudulent inducement, breach of contract, and unjust enrichment. Defendants also counterclaimed for a declaration that the withdrawal agreement was void because entered into under the duress of Ederer's alleged threat not to try the case in Georgia.

On November 7, 2005, defendants moved to dismiss the complaint as to defendants Gursky, Stern, Feinberg and Levine; to dismiss the first and second causes of action for an accounting and the third cause of action for breach of contract (the May 2000 oral agreement), or, in the alternative, for summary judgment in favor of all defendants upon these causes of action; and/or for summary judgment in favor of defendants "providing that goodwill should not be valued in connection with an accounting of the affairs of [the PC] and/or [the LLP]." As relevant to this appeal, defendants argued that Ederer's complaint set forth no cognizable causes of action upon which relief could be granted against the individual defendants because Partnership Law § 26 (b) shielded them from any personal liability.

On November 30, 2005, Ederer opposed defendants' motion and cross-moved for partial summary judgment on liability on his first and second causes of action for an accounting, and his third, fourth and fifth causes of action for breach of contract. He asked Supreme Court to direct that a trial be held on damages with respect to the accounting; and requested summary judgment dismissing defendants' counterclaims.

Supreme Court determined that Ederer was entitled to an accounting against all defendants because Partnership Law § 26, which places limits on the personal liability of partners in an LLP, applies "to debts of the partnership or the partners to third parties" and "has nothing to do with a partner's fiduciary obligation to account to his partners for the assets of the partnership." The trial court also rejected defendants' argument that "an accounting of Ederer's interest in [the PC] should not be allowed both because [he] was not a shareholder in the P.C., and because the P.C. had effectively transferred all of its remaining assets to the LLP as of the date of [his] withdrawal from the firm, rendering the accounting of the P.C. duplicative." The court determined that, "[b]ecause of confusion of the location of the firm's assets at the time Ederer left the firm, in order for the accounting of [his] interest to be complete, it must necessarily include an accounting of the firm's assets taken by Gursky from the P.C., as well as an accounting of Ederer's partnership in the LLP."

In sum, Supreme Court denied defendants' motions in all respects; granted so much of Ederer's cross motion as sought to dismiss defendants' counterclaims for fraud, breach of contract, a declaration that the withdrawal agreement was void, and unjust enrichment, but concluded that there were triable issues of fact precluding dismissal of defendants' counterclaims for breach of fiduciary duty, conversion, and tortious interference with contractual relations; declared the withdrawal agreement valid and enforceable; granted so much of the cross motion as sought partial summary judgment for an accounting against all defendants; and referred the issue of the accounting of the PC and the LLP to a special referee to hear and report with recommendations, or, upon stipulation of the parties, for the special referee or another referee designated by the parties to determine the issue. The trial court further ordered the motion to be held in abeyance pending receipt of the special referee's report and recommendations and a motion under CPLR 4403, or receipt of a determination; and directed the remainder of the action to continue. Defendants appealed.

The Appellate Division affirmed Supreme Court's order on December 5, 2006, concluding that

> "Partnership Law § 26 (b), limiting the liability of partners of a limited liability partnership, does not exempt . . . partners from their individual obligations to account to a withdrawing partner under the earlier enacted and unamended Partnership Law § 74 (Rich, Practice Commentaries, McKinney's Cons Law of NY, Book 38, Partnership Law art 8-B, at 426; compare Partnership Law § 40 [1], [2]; § 71 [d])," and "does not exempt the individual defendants from liability to plaintiff for breaches of firm-related agreements between them" (Ederer v Gursky, 35 AD3d 166, 166-167 [1st Dept 2006]).

Although individual defendants argued that they had not entered into any agreements with Ederer,

> "it appears that the assets of the PC, with which [Ederer] entered into three agreements, were transferred to the successor LLP, in which all of the individual defendants were partners. The nature and value of the PC's assets, and [Ederer's] interest therein, will be determined in the accounting, and to the extent any of the defendants are in possession of those assets, they may be obliged to pay them over to [Ederer]" (id. at 167).

Defendants subsequently moved in the Appellate Division for leave to appeal to this Court. On March 20, 2007, the Appellate Division granted defendants' motion and certified the following question to us: "Was the order of Supreme Court, as affirmed by this Court, properly made?" Defendants limited the appeal to this Court to challenging so much of the Appellate Division order as affirmed Supreme Court's denial of the individual defendants' motion for summary judgment. To the extent appealed from, as limited by defendants' brief, we now affirm, answering the certified question in the affirmative.

## II.

This appeal comes down to a dispute over the effect of the Legislature's 1994 amendments to section 26 of the Partnership Law (L 1994, ch 576, § 8). As originally adopted by the Legislature in 1919 (L 1919, ch 408), section 26 was identical to section 15 of the Uniform Partnership Act (UPA), which was drafted by the National Conference of Commissioners on

Uniform State Laws and approved by the Conference in 1914.[2] Prior to its amendment in 1994, section 26 provided that

"[a]ll partners are liable

"1. Jointly and severally for everything chargeable to the partnership under sections twenty-four and twenty-five.

"2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

Section 24 specifies that

> "[w]here, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

Section 25 binds the partnership to "make good the loss"

> "1. Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and
>
> "2. Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership."

Partnership Law § 26, as originally enacted, and its prototype, section 15 of the UPA, have always been understood to mean what they plainly say: general partners are jointly and severally

---

**2.** The UPA (1914), which governed general partnerships and limited partnerships except where the limited partnership statute was inconsistent, was adopted in every state except Louisiana, and was "the subject of remarkably few amendments in those states" (*see* Prefatory Note to Uniform Partnership Act [1997]). The Conference did not set out to revise the UPA until the 1980s, resulting in a Revised Uniform Partnership Act (RUPA), adopted in 1992, which was amended and restyled the Uniform Partnership Act (1993). Subsequently, another round of changes was incorporated, and the Conference adopted the Uniform Partnership Act (1994). Finally, the Conference added provisions "authorizing the creation of a new form of general partnership called a limited liability partnership (LLP)," which became part of the Uniform Partnership Act (1997) (also referred to as RUPA) (Prefatory Note Addendum). By that time, more than 40 states, including New York, had already amended their general partnership statutes to add limited liability partnership provisions (*id.*).

liable to nonpartner creditors for all wrongful acts and breaches of trust committed by their partners in carrying out the partnership's business, and jointly liable for all other debts to third parties. This proposition follows naturally from the very nature of a partnership, which is based on the law of principal and agent. Just as a principal is liable for the acts of its agents, each partner is personally responsible for the acts of other partners in the ordinary course of the partnership's business. In addition to this vicarious liability to nonpartner creditors, each partner concomitantly has an obligation to share or bear the losses of the partnership through contribution and indemnification in the context of an ongoing partnership (see Partnership Law § 40 [1], [2] as originally enacted, which is identical to section 18 [a] and [b] of the UPA); and contribution upon dissolution and winding up (see Partnership Law § 65 as originally enacted, which is identical to section 34 of the UPA; Partnership Law § 71 [d] as originally enacted, which is identical to section 40 [d] of the UPA).

The nationwide initiative to create a new business entity combining the flexibility of a partnership without the onus of this traditional vicarious liability originated with a law adopted

> "in Texas in 1991, following the savings and loan crisis. At that time, a number of legal and accounting firms faced potentially ruinous judgments arising out of their professional services for banks and thrifts which thereafter failed. Because these professional firms were typically organized as general partnerships, this liability also threatened the personal assets of their constituent partners. The Texas LLP statute protected such partners (at least prospectively) from this unlimited personal exposure without requiring a reorganization of their business structure" (Walker, New York Limited Liability Companies and Partnerships: A Guide to Law and Practice § 14:3, at 344-345 [1 West's NY Prac Series 2002]; see also Fortney, Seeking Shelter in the Minefield of Unintended Consequences—The Traps of Limited Liability Law Firms, 54 Wash & Lee L Rev 717, 724 [1997] [noting that following the failure of a number of Texas financial institutions, regulators sued these institutions' professional advisers, including attorneys, for damages far exceeding their law firms' insurance coverage; and that because

"(a)ttorneys could not fathom the possibility of their personal, nonexempt assets being subject to execution for judgment arising from their partners' malpractice," they were "spurred (to seek) legislative changes to limit their vicarious liability"]; Keatinge et al., *Limited Liability Partnerships: The Next Step in the Evolution of the Unincorporated Business Organization*, 51 Bus Law 147, 174 [1995] ["The principal impetus in the enactment of (limited liability partnership) legislation has been the limitation of vicarious liability to third parties"]).

In New York, the Legislature enacted limited liability partnership legislation as a rider to the New York Limited Liability Company Law (*see* Walker § 14:2, at 344). This legislation eliminated the vicarious liability of a general partner in a registered limited liability partnership by amending section 26 of the Partnership Law, and making conforming changes to sections 40 (1), (2), 65 and 71 (d). Specifically, new section 26 (b) creates an exception to the vicarious liability otherwise applicable by virtue of section 26 (a) (original section 26 [section 15 of the UPA]), by providing that

"[e]xcept as provided by subdivisions (c) and (d) of this section, no partner of a partnership which is a registered limited liability partnership is liable or accountable, directly or indirectly (including by way of indemnification, contribution or otherwise), for any debts, obligations or liabilities of, or chargeable to, the registered limited liability partnership or each other, whether arising in tort, contract or otherwise, which are incurred, created or assumed by such partnership while such partnership is a registered limited liability partnership, solely by reason of being such a partner."

Section 26 (c) excludes from section 26 (b)'s liability shield "any negligent or wrongful act or misconduct committed by [a partner] or by any person under his or her direct supervision and control while rendering professional services on behalf of [the] registered limited liability partnership." Section 26 (d) allows partners to opt out from or reduce the reach of section 26 (b)'s protection from vicarious liability.

As one commentator has noted, by "expressly provid[ing] that limited liability includes liability by way of indemnification or contribution," section 26 (b) precludes the potential for a

plaintiff to "attempt an end-run around the liability shield of [section 26 (b)] by first asserting a claim against the [limited liability partnership] and then arguing that the general partnership statute requires the [limited liability partnership] partners to make contributions to the [limited liability partnership]" (Johnson, *Limited Liability for Lawyers: General Partners Need Not Apply*, 51 Bus Law 85, 110 [1995]). The Legislature further expressed its intention to negate a partner's indemnification or contribution obligations with respect to liabilities for which the partner was not vicariously liable by making sections 40 (1), (2), 65 and 71 (d) subject to section 26 (b).

Defendants point out that section 26 (b) eliminates the liability of a partner in a limited liability partnership for "any debts" without distinguishing between debts owed to a third party or to the partnership or each other. As a result, they contend, the Legislature did not "leave open to conjecture whether § 26 (b) was intended to cover debts which may be owed by the [limited liability partnership] (or one partner) to other partners." This argument ignores, however, that the phrase "any debts" is part of a provision (section 26) that has always governed only a partner's liability to third parties, and, in fact, is part of article 3 of the Partnership Law ("Relations of Partners to Persons Dealing with the Partnership"), not article 4 ("Relations of Partners to One Another"). The logical inference, therefore, is that "any debts" refers to any debts owed a third party, absent very clear legislative direction to the contrary.

Defendants also note that chapter 576's legislative history illustrates the desire to enact liability protection for partners in limited liability partnerships that is "the same as that accorded to shareholders of a professional corporation organized under the [Business Corporation Law] [and] as that accorded to members of a professional LLC" (Senate Introducer Mem in Support, Bill Jacket, L 1994, ch 576). They point out that "the legislative history of the LLP Act plainly indicates that the Legislature intended to provide an even greater shield of individual liability to partners in LLPs than that enacted by other states as of the date of the legislation."

These observations are correct, but do not advance defendants' cause. Chapter 576 does, in fact, afford limited liability partners the same protection from third-party claims as New York law provides shareholders in professional corporations or professional limited liability companies. And unlike New York,

most states "have adopted a partial liability shield protecting the partners only from vicarious personal liability for all partnership obligations arising from negligence, wrongful acts or misconduct, whether characterized as tort, contract or otherwise, committed while the partnership is an LLP" (*see* Prefatory Note Addendum to Uniform Partnership Act [1997] [explaining that RUPA, by contrast, "provid(es) for a corporate-styled liability shield which protects partners from vicarious personal liability for all partnership obligations incurred while a partnership is a limited liability partnership"]; *see also* Walker § 14:5, at 346 ["The type of LLP generally permitted by the states (other than Minnesota and New York) . . . offers less insulation against personal liability than many other types of organization"]). Nowhere in the voluminous commentary on limited liability partnerships has anyone suggested that New York (or any other state) has adopted a statute expanding the concept of limited liability in the way asserted by defendants.

Next, defendants make two arguments in their attempt to reconcile their interpretation of section 26 (b) with Partnership Law § 74, which gives a partner "[t]he right to an account of his interest . . . as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of agreement to the contrary" (*see also* Partnership Law § 43, which is identical to section 21 of the UPA [*see* Uniform Partnership Act (1914) § 21, Comment, 6 ULA (part II) 194 (indicating that the words "and hold as trustee for the partnership any profits" were meant to "indicate clearly that the partnership can claim as their own any property or money that can be traced" in a situation where a specific sum of partnership money or property is in the hands of an insolvent partner)]). First, they argue that their fiduciary duty as partners to account to one another "is not the same as personal liability for the debts disclosed by the accounting." But the remedy of accounting is restitutionary by definition (*see* Eichengrun, *Remedying the Remedy of Accounting*, 60 Ind LJ 463, 463 [1984-1985] [in an accounting, "(t)he plaintiff must establish some basis for the obligation to account, the defendant is ordered to account, and the plaintiff then gets an order directing payment of the sum of money found due"]; *see also* Belsheim, *The Old Action of Account*, 45 Harv L Rev 466 [1931-1932]). Second, defendants claim that a partner is only personally liable for debts disclosed in an accounting which are attributable to that partner's own torts or wrongful conduct or

supervisory lapses, as excluded by Partnership Law § 26 (c) from the protection of section 26 (b). If the Legislature had intended to qualify section 74 in this manner, however, it surely would have explicitly made section 74 subject to sections 26 (b) and/or 26 (c). It did not do so for the same reason that defendants' arguments fail generally: section 26 (b) only addresses a partner's vicarious liability for partnership obligations.

In closing, we emphasize that the law of partnerships contemplates a written agreement among partners specifying the terms of their relationship. The Partnership Law's provisions are, for the most part, default requirements that come into play in the absence of an agreement. For example, the right to an accounting exists, "absen[t an] agreement to the contrary" (Partnership Law § 74). Partners might agree, as among themselves, to limit the right to contribution or indemnification or to exclude it altogether. In this case, however, there was no written partnership agreement; therefore, the provisions of the Partnership Law govern.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question should be answered in the affirmative.

SMITH, J. (dissenting). The text of Partnership Law § 26 (b) seems clear to me: "no partner of a partnership which is a registered limited liability partnership is liable . . . for any debts, obligations or liabilities of . . . the registered limited liability partnership . . . whether arising in tort, contract or otherwise." The statute contains two specific exceptions, applicable when a partner acts wrongfully or when partners agree to vary the liability scheme (Partnership Law § 26 [c], [d]), but there is no exception for liabilities to former partners claiming a share of the partnership's net assets. We should not create an exception that the Legislature did not (*see We're Assoc. Co. v Cohen, Stracher & Bloom*, 65 NY2d 148, 151 [1985]). The majority draws a distinction between liability to "third parties" and liabilities to former partners (majority op at 524)—but a *former* partner is a third party where the partnership is concerned, and there is no good reason to treat him more favorably than any other third party.

No one suggests that section 26 (b) exempts partners from any of their fiduciary duties; if a partner has diverted partnership funds to himself, or otherwise received more than his fair

share, he will not escape liability and his former partners, as well as his existing partners, will be made whole. The issue is whether a former partner claiming his partnership share may reach the personal assets of partners who are no more blameworthy, and have no more been unjustly enriched, than he has.

I can think of two situations in which this issue may be important. First, without any fault by any partner, the business of the partnership may go badly after a partner withdraws from the firm but before he is paid his share, leaving the firm without enough assets to satisfy his claim. (This is apparently what happened here.) Secondly, the partnership's insolvency may result from the fault of a partner who is himself insolvent; in that case, the question is whether the former partner can proceed against the innocent remaining partners.

In the first case, there is no apparent reason why a former partner should be allowed to collect his debt when other third-party creditors may not; in fact, the Partnership Law provides in another context that debts to nonpartners have a preferred status (Partnership Law § 71 [b]). In the second case, the rule adopted by the majority can produce even more clearly perverse results. Take an extreme example: Suppose there are three partners, two with a 49% interest each and one with a 2% interest. One of the 49% partners withdraws, and is entitled to 49% of the firm's assets. Before he can be paid, however, it is found that the other 49% partner has stolen all of those assets, lost them at a casino and gone bankrupt. Why should the innocent 2% partner have to make good the former partner's large loss?

If the Gursky & Ederer firm had remained a professional corporation, instead of turning itself into a limited liability partnership, the result in this case would not be in question: the individual shareholders of the corporation would not be liable for its obligation to Ederer. I do not see why the partners of an LLP should have an obligation that the shareholders of a PC do not, and I therefore dissent.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur with Judge READ; Judge SMITH dissents in a separate opinion in which Chief Judge KAYE concurs.

Order, insofar as appealed from, affirmed, etc.

[Next page is 801.]