# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

August Term, 2013

(Argued: October 7, 2013     Decided: November 15, 2013)

Docket No. 12-4138-bk

———————————

IN RE: THELEN LLP

———————————

YANN GERON, as Chapter 7 Trustee of the Estate of Thelen LLP,

*Plaintiff-Appellant,*

— v. —

SEYFARTH SHAW LLP,

*Defendant-Appellee.*[*]

———————————

B e f o r e:

LYNCH, CHIN, and CARNEY, *Circuit Judges.*

———————————

———————————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Plaintiff-Appellant Yann Geron, as Chapter 7 Trustee of Thelen LLP, appeals from a decision of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*) that granted Defendant-Appellee Seyfarth Shaw LLP's motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).  The district court concluded that under New York law, the "unfinished business doctrine"does not apply to a dissolving law firm's pending hourly fee matters, and determined that a partnership does not retain any property interest in outstanding hourly fee matters upon the firm's dissolution.  Because we conclude that we cannot definitively resolve this significant question of state law without guidance from the New York Court of Appeals, we certify the relevant questions to that court.

QUESTIONS CERTIFIED.

————————

HOWARD P. MAGALIFF, Rich Michaelson Magaliff Moser, LLP, New York, New York, *for Plaintiff-Appellant*.

THOMAS FEHER, Thompson Hine LLP, Cleveland, Ohio (M. Ryan Pinkston, Chicago, Illinois, and Robert W. Dremluk, Seyfarth Shaw LLP, New York, New York, *on the brief*), *for Defendant-Appellee*.

DAMIAN SCHAIBLE (David A. Lewis, *on the brief*), The Association of the Bar of the City of New York, New York, New York *for Amicus Curiae in support of Defendant-Appellee.*

---

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to decide whether, for purposes of administering the firm's related bankruptcy, New York law treats a dissolved law firm's pending hourly fee matters as its property. Because we conclude that we cannot definitively answer that question without the guidance of the New York Court of Appeals, we certify controlling questions of law to that court.

## BACKGROUND

### I. Facts

On October 28, 2008, the partners of the law firm Thelen LLP ("Thelen"), a registered limited liability partnership governed by California law, voted to dissolve the firm, which was insolvent. In effectuating the dissolution, Thelen's partners adopted the Fourth Amended and Restated Limited Liability Partnership Agreement (the "Fourth Partnership Agreement") and a written Plan of Dissolution. The Fourth Partnership Agreement provided that it was governed by California law.

3

Unlike Thelen's previous partnership agreements, the Fourth Partnership Agreement contained an "Unfinished Business Waiver,"[1] which provides:

> Neither the Partners nor the Partnership shall have any claim or entitlement to clients, cases or matters ongoing at the time of the dissolution of the Partnership other than the entitlement for collection of amounts due for work performed by the Partners and other Partnership personnel prior to their departure from the Partnership. The provisions of this [section] are intended to expressly waive, opt out of and be in lieu of any rights any Partner or the Partnership may have to "unfinished business" of the Partnership, as the term is defined in <u>Jewel v. Boxer</u>, 156 Cal. App. 3d 171 (Cal. App. 1 Dist. 1984), or as otherwise might be provided in the absence of this provision through the interpretation of the [California Uniform Partnership Act of 1994, as amended].

Compl. ¶ 34.

The Partnership adopted the waiver with the

> hope that [it would] serve as an inducement to encourage Partners to move their clients to other law firms and to move Associates and Staff with them, the effect of which will be to reduce expenses to the Partnership, and to assure that client matters are

---

[1] Such a waiver is often referred to as a "Jewel Waiver," from the name of the California case that recognized that, absent an agreement to the contrary, profits derived from a law firm's unfinished business are owed to the former partners in proportion to their partnership interests. <u>See</u> <u>Jewel v. Boxer</u>, 203 Cal. Rptr. 13, 15-17 (Cal. Ct. App. 1984).

> attended to in the most efficient and effective manner possible, and to help ensure collection of existing accounts receivable and unbilled time with respect to such clients.

Compl. ¶ 35.

Following Thelen's dissolution, eleven Thelen partners joined Seyfarth Shaw LLP ("Seyfarth"), ten in its New York office and one in California. The former partners transferred to Seyfarth unfinished matters from Thelen, and Seyfarth billed clients for their services.

## II.    Prior Proceedings

Thelen filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (Allan L. Gropper, *Judge*). At that time, Thelen stated in its petition that it "has been domiciled or has had a residence, principal place of business, or principal assets" in the Southern District of New York. Following his appointment as the Chapter 7 trustee of Thelen's bankruptcy estate, Yann Geron (the "Trustee") commenced an adversary proceeding against Seyfarth.[2] The

---

[2] The Trustee's complaint also listed several unnamed Seyfarth partners as defendants in the adversary proceeding. In its September 4, 2013 Memorandum and Order, the district court considered that complaint in tandem with a separate complaint filed by the trustee against Robinson & Cole LLP and unnamed

5

Trustee sought to avoid the Unfinished Business Waiver as a constructive fraudulent transfer under 11 U.S.C. §§ 544 and 548 (a)(1)(B) and California state law, and to recover the value of Thelen's unfinished business for the benefit of the estate's creditors. See 11 U.S.C. § 704(a)(1). Proceeding from the assumption that pending hourly matters were among a law firm's assets, the Trustee contended that Thelen fraudulently transferred those assets to individual partners without consideration when its partners adopted the Unfinished Business Waiver on the eve of dissolution, when the firm was insolvent.[3]

Seyfarth moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). Seyfarth argued, and the district court found, that New York law governed the dispute. The district court noted that under New York law, "it is well settled that '[a]bsent an agreement to the contrary, pending *contingent fee cases* of a dissolved

---

partners of that firm. Yann Geron v. Robinson & Cole LLP, No. 09-15631-alg (Bankr. S.D.N.Y.), ECF No. 281. Because neither Robinson & Cole LLP nor any of the unnamed partners of either firm are parties to this appeal, we will not discuss them further.

[3] A "transfer" is "each mode, direct or indirect, . . . of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). A bankruptcy trustee may recover the value of fraudulently transferred property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

partnership are assets subject to distribution.'"  Geron v. Robinson & Cole LLP,

476 B.R. 732, 739 (S.D.N.Y. 2012) (emphasis in Geron), quoting Santalucia v.

Sebright Transp., Inc., 232 F.3d 293, 297 (2d Cir. 2000).  The district court correctly

noted, however, that New York courts have not authoritatively resolved whether

the unfinished business doctrine applies to pending *hourly* fee matters.  The court

held that recognizing a property right in unfinished hourly fee matters would

"conflict[] with New York's strong public policy in favor of client autonomy and

attorney mobility," id. at 742-43, and that "applying the unfinished business

doctrine to pending hourly fee matters would result in an unjust windfall for the

Thelen estate, as 'compensating a former partner out of that fee would reduce the

compensation of the attorneys performing the work,'" id. at 740, quoting

Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP, No. 150178/10, 35 Misc.

3d 1201(A), 2011 WL 7574999, at * 5 (N.Y. Sup. Ct. Sept. 13, 2011).

In reaching this conclusion, the district court expressly disagreed with the

decision of another court in the same district in Development Specialists, Inc. v.

Akin Gump Strauss Hauer & Feld LLP ("Coudert Brothers"), which had held that

pending hourly matters were law firm assets, in part, because "the method by

which the Client Matters were billed does not alter the nature of [a law firm's]

7

property interest in them." 480 B.R. 145, 154 (S.D.N.Y. 2012).[4] The district court

therefore granted Seyfarth's motion for judgment on the pleadings, finding that

the Trustee's complaint was deficient because it "fail[ed] to distinguish between

pending contingency fee matters and hourly fee matters." Geron, 476 B.R. at 743.

The district court withdrew the reference to the bankruptcy court, and entered a

final judgment dismissing the Trustee's claims. The Trustee timely appealed.

**DISCUSSION**

I.     Standard of Review

"We review *de novo* a district court's decision to grant a motion for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)."

Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). In deciding a Rule 12(c)

motion, we "employ[] the same standard applicable to dismissals pursuant to

Fed. R. Civ. P. 12(b)(6)." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009)

(internal quotation marks and alteration omitted). Thus, we accept all factual

---

[4] The Coudert Brothers decision has also been appealed to this Court. A different panel of this Court recently entered an order granting the request of appellants in that case that it too be certified to the New York Court of Appeals if a certification order is entered in this one. The order did not specify what questions would be certified in that matter. See October 30, 2013 Order, Coudert Brothers, No. 12-4916, ECF No. 138.

8

allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. <u>Hayden</u>, 594 F.3d at 160. "To survive a Rule 12(c) motion . . . [a] 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Johnson</u>, 569 F.3d at 44, quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies. <u>See Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002). "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 426 (2d Cir. 2008).

"We review the district court's interpretation and application of state law *de novo*." <u>Santalucia</u>, 232 F.3d at 297. To conduct our inquiry, "we of course look to the state's decisional law, as well as to its constitution and statutes." <u>Id</u>. Where state law is unsettled, we are obligated to "carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." <u>Maska U.S., Inc. v. Kansa Gen. Ins. Co.</u>, 198 F.3d 74, 78 (2d Cir. 1999) (internal quotation

9

marks omitted).  Where, as here, a state's highest court has not spoken on an issue, we give "proper regard" to the relevant rulings of a state's lower courts. Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994) (internal quotation marks omitted).  "We may also consider decisions in other jurisdictions on the same or analogous issues." Maska U.S., 198 F.3d at 78 (internal quotation marks omitted).

II.     Analysis

A.     Choice of Law

As a threshold matter, we must determine whether New York or California law governs this dispute.  "[W]here no significant federal policy, calling for the imposition of a federal conflicts rule, exists," Bianco v. Erkins (*In re* Gaston & Snow), 243 F.3d 599, 607 (2d Cir. 2001), a bankruptcy court must apply the choice of law rules of the forum state, Statek Corp. v. Dev. Specialists, Inc. (*In re* Coudert Bros. LLP), 673 F.3d 180, 186 (2d Cir. 2012).  Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." GlobalNet Financial.com, Inc v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006) (internal quotation marks omitted).  Of course, we cannot determine at this

juncture whether there is an actual conflict, because New York law is unresolved on the relevant question. For purposes of our choice of law analysis, then, we assume there to be a conflict, and we look simply to New York's applicable choice of law principles to determine which state's law governs. The parties do not dispute that a fraudulent conveyance is a tort, see Cruden v. Bank of New York, 957 F.2d 961, 974 (2d Cir. 1992), and therefore agree that we should apply New York's interest-analysis test. See GlobalNet, 449 F.3d at 384 ("The relevant analytical approach to choice of law in tort actions in New York is the interest analysis.") (internal quotation marks and alteration omitted).

New York's interest analysis requires that "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Id., quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985) (alterations in Schultz). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." Schultz, 65 N.Y.2d at 197.

Under the interest-analysis test, torts are divided into two types, conduct-regulating rules, such as "rules of the road," and loss-allocation rules, "such as

11

those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit." GlobalNet, 449 F.3d at 384 (internal quotation marks omitted). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993). If the conflict involves loss-allocation rules, "the site of the tort is less important, and the parties' domiciles are more important." GlobalNet, 449 F.3d at 384-85. Here, the parties do not dispute that a fraudulent conveyance statute is conduct-regulating rather than loss-allocating.

We conclude that New York has a greater interest in regulating this conduct than California, because the most significant contacts in this case are with New York. First, the majority of the former Thelen partners who moved to Seyfarth are licensed to practice in New York, and joined Seyfarth's New York office.[5] Second, in its Chapter 7 petition in the Southern District of New York, Thelen stated that it "has been domiciled or has had a residence, principal place

---

[5] The Trustee appended a list of these partners to the complaint, and thus the attorneys' state of admission was properly subject to judicial notice. See Fed. R. Evid. 201.

12

of business, or principal assets" in the Southern District of New York. Although the parties' domicile is less important for conduct-regulating rules than for loss-allocation rules, cf. GlobalNet, 449 F.3d at 384-85, the location of the firm's principal place of business is certainly relevant in deciding the law applicable to actions taken in the course of that business.[6] Third, for claims based on fraud, the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated.[7] In this case, that is New York. The fact that Thelen was a registered partnership under California law is not by itself sufficient to overcome the significance of those contacts. Accordingly, we conclude that New York law governs this dispute.

B. Unfinished Business Under New York Law

New York's law of partnerships is codified in the New York Partnership Law, itself a codification of the Uniform Partnership Act, see N.Y. P'ship Law § 1

---

[6] To the extent it could be argued that the fraudulent conveyance was effected when the Fourth Partnership Agreement was executed, the record does not reflect where that occurred. It is a reasonable inference that it occurred at Thelen's principal place of business.

[7] See Restatement (First) of Conflict of Laws § 377 n. 4 ("When a person sustains loss by fraud, the place of wrong is where the loss is sustained . . . ."); accord Cooney, 81 N.Y.2d at 72 ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply . . . .").

13

(McKinney 1919). The Partnership Law, which applies to every trade, occupation or profession, id. § 2, sets "default requirements that come into play in the absence of an agreement," Ederer v. Gursky, 9 N.Y.3d 514, 526 (2007). These default rules define partnership property, N.Y. P'ship Law § 12, and define the rights and duties of partners, id. §§ 40, 43. The parties do not dispute that New York's lower courts have uniformly read these provisions to mean that, in the absence of an agreement to the contrary, pending contingent fee cases of a dissolved partnership are firm assets subject to distribution.[8]

We explored this rule, generally known as the unfinished business doctrine, in Santalucia v. Sebright Transportation Inc., 232 F.3d 293 (2d Cir. 2000). There, following the settlement of a wrongful death action, the plaintiff sought an order apportioning the contingent fee award between himself and his former law firm. Id. at 294. Prior to its dissolution, the firm had been retained as counsel in the action. We surveyed the New York cases and determined it "beyond cavil . . . that a member of a law firm owes a fiduciary duty to other members of

---

[8] See Grant v. Heit, 693 N.Y.S.2d 564, 565 (1st Dep't 1999); Shandell v. Katz, 629 N.Y.S.2d 437, 439 (1st Dep't 1995); DelCasino v. Koeppel, 615 N.Y.S.2d 454, 455 (2d Dep't 1994); Dwyer v. Nicholson, 602 N.Y.S.2d 144, 146 (2d Dep't 1993); Kirsch v. Leventhal, 586 N.Y.S.2d 330, 332 (3d Dep't 1992).

14

the firm." Id. at 297; see also Graubard Mollen Dannett & Horowitz v.

Moskovitz, 86 N.Y.2d 112, 118 (1995) ("[L]aw partners, no less than any other

business or professional partners, are bound by a fiduciary duty requiring the

punctilio of an honor the most sensitive.") (internal quotation marks omitted).

We concluded, therefore, that "where a lawyer departs from a dissolved

partnership and takes with him a contingent fee case which he then litigates to

settlement, the dissolved firm is entitled only to the value of the case at the date

of dissolution, with interest." Id. at 298.

We acknowledged, however, that the New York Court of Appeals had not

addressed the application of the unfinished business doctrine to a law firm's

contingent fee matters. Id. at 297. While the unanimous view of New York's

intermediate appellate courts that the unfinished business rule applies to such

matters enabled us confidently to predict that the Court of Appeals would take a

similar view, the absence of binding authority from that court counsels caution in

determining whether the rationale of those decisions extends to hourly fee

matters.

In sharp contrast to the uniform view of New York's appellate courts that

the unfinished business doctrine applies to contingent fee matters, there is scant

New York authority with respect to whether the rule also applies to hourly fee matters. No New York appellate court appears to have addressed the issue, and the one New York trial court to address whether the doctrine applies to a firm's pending hourly fee matters concluded that it does not. See Sheresky, 2011 WL 7574999, at * 4 ("It is logical to distinguish between contingency fee arrangements and cases which are billed on the basis of hourly work."). In light of this doctrinal uncertainty, it is unsurprising that courts in the Southern District of New York have split on whether the unfinished business doctrine applies to a law firm's pending hourly fee matters.[9]

There are strong legal and policy arguments on both sides of the issue. Several considerations favor application of the rule to hourly fee cases. First, the New York Partnership Law, which, to reiterate, sets only default rules, makes no distinction between types of partnerships. N.Y. P'ship Law § 2. In applying

---

[9] Compare Coudert Brothers, 480 B.R. at 163 ("[U]nless the Firms can suggest a meaningful distinction between law partnerships and other partnerships, or a meaningful difference between legal business that is billed by the hour versus handled on contingency, I can predict with reasonable certainty that the New York Court of Appeals would find that the Client Matters in this case were Coudert's property in the absence of an agreement to the contrary."), with Geron, 476 B.R. at 741 ("New York law does not recognize a debtor law firm's property interest in pending hourly fee matters.").

these default rules, the New York Court of Appeals has determined that

executory contracts to perform professional services are partnership assets unless

a contrary intention appears, even where such a contract is terminable at will.

See Stem v. Warren, 227 N.Y. 538, 546-47 (1920); see also Scholastic, Inc. v. Harris,

259 F.3d 73, 89 (2d Cir. 2001) ("[U]nder Stem, if an executory contract with a third

party contemplates that it should survive dissolution, it remains a joint venture

asset and the co-venturers have an obligation to perform with the concomitant

right to its benefits.").  Arguably, therefore, the unfinished business rule applies

to all partnerships including law firms, and to all types of business conducted by

such firms.

Second, the Partnership Law instructs New York courts to adopt

interpretations of its provisions that conform to those of other Uniform

Partnership Act states.  N.Y. P'ship Law § 4(4).  A substantial majority of cases

from such jurisdictions have applied the unfinished business doctrine to hourly

rate cases.[10]  Those cases suggest that the New York Court of Appeals would

---

[10] See, e.g., Robinson v. Nussbaum 11 F. Supp. 2d 1, 4-5 (D.D.C. 1997); Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP), 408 B.R. 318, 333 (Bankr. N.D. Cal. 2009); In re Labrum & Doak, 227 B.R. 391, 409-10 (Bankr. E.D. Pa. 1998).  But see Welman v. Parker, 328 S.W.3d 451, 457 (Mo. Ct. App. 2010) (refusing to apply unfinished business doctrine to

decline to create an exception to the usual partnership rule for lawyers who bill their clients on an hourly basis.

Third, it can be argued that sound policy reasons counsel against such an exception. To the extent that the unfinished business doctrine applies in contingent fee matters, creating a different rule for hourly fee matters might mean that a law partner's fiduciary obligations to his firm would vary based on the manner in which clients are billed. Such a rule would undoubtedly encourage the view, now prevailing among many, that an individual partner's book of business is not an asset of the firm, but instead a piece of personal property to be guarded with a Cerberus-like ferociousness.[11]

But substantial arguments may be made for the opposite view. First, the New York Court of Appeals has suggested that the attorney-client relationship is different from those tying customers to other business partnerships. See Demov, Morris, Levin & Shein v. Glantz, 53 N.Y.2d 553, 556 (1981) (recognizing "unique hourly fee matters).

[11] See, e.g., Mark Harris, Why More Law Firms Will Go the Way of Dewey & LeBoeuf, Forbes, May 8, 2012, http://www.forbes.com/sites/forbesleadershipforum/2012/05/08/why-more-law-firms-will-go-the-way-of-dewey-leboeuf ("The portability of the partner's 'book' has weakened the bonds that hold firms together and threatens the identity of the law firm as we know it.").

relationship" between attorney and client as "one of the most sensitive and confidential relationships in our society"). Because the client has an unassailable right to discharge an attorney at any time, with or without cause, it is clear that "clients are not merchandise." Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 98 (1989) (internal quotation marks omitted). Recognizing a law firm's property interest in pending client matters might undermine that relationship, and be "inconsistent with the best concepts of [lawyers'] professional status." Id. (internal quotation marks omitted).

Second, unyielding application of the unfinished business doctrine might have unintended consequences. For example, the doctrine may discourage other law firms from accepting lawyers and client engagements from a dissolved law firm for fear that a substantial portion of the resulting profits may be turned over to the dissolved law firm or its creditors. An untoward disruption in client services might result.

Third, the New York Rules of Professional Conduct could be interpreted to forbid the unfinished business doctrine altogether. See N.Y. Rules of Prof'l Conduct R. 1.5(g) (prohibiting fee splitting); id. R. 5.6(a) (forbidding agreements restricting lawyer mobility). Although the Rules of Professional Conduct lack the

force of law, see Niesig v. Team I, 76 N.Y.2d 363, 369 (1990), New York courts interpret other laws to harmonize with these rules to the extent practicable, id. at 370. As noted above, while New York's intermediate appellate courts have not accepted these arguments, in the absence of a definitive ruling from the Court of Appeals, we cannot rule out the possibility that, confronted with a novel application of the rule, that court might conclude that the unfinished business rule should not apply to *any* of a law firm's cases.

Fourth, even if the rule is properly held to apply to contingent fee cases, hourly fee matters are arguably different. In a contingent fee case, the fee that is ultimately earned may be heavily dependent on work done by the dissolved partnership, which has been paid nothing for the work that it contributed to the outcome. In an hourly fee matter, by contrast, the former firm has been fully compensated for the work it has already done, and future work can be directed by the client to a new lawyer or firm that will be paid only for future work. In effect, the hourly work still to be performed, whether or not on an unfinished *matter*, can be construed as new, rather than unfinished, business.[12] These

_____

[12] Indeed, it could be argued that a rule denying the former firm a share of future hourly billings is entirely consistent with the contingent fee rule applied in Santalucia, 232 F.3d at 298. There, we permitted the dissolved firm to recover

20

arguments have persuaded the only New York court to have addressed the issue, and one of the two federal courts that have confronted it, that New York law distinguishes hourly from contingent-fee cases, and does not apply the unfinished business rule to the former.

We recognize the strength of all of these arguments, and of the many others raised by the parties, amici, and other litigants.[13]  Given the significance of these issues to members of the New York bar, we hesitate to definitively resolve them without first seeking the views of the New York Court of Appeals, an issue to which we now turn.

---

only the projected value of the contingent fee case at the time of dissolution, and allowed the new firm to retain any additional value added to the case by its subsequent work.  Id. ("[T]he lawyer must remit to his former firm the settlement value, less that amount attributable to the lawyer's efforts after the firm's dissolution.").  This rule, it could be contended, is analogous to one that assigns amounts receivable for past work to the dissolved firm, while allowing the new firm to retain the additional value attributable to future work.

[13] This panel has taken judicial notice of the arguments raised in the Coudert Brothers appeal.  See October 30, 2013 Order, Coudert Brothers, No. 12-4916, ECF No. 138

21

C.    Certification

Under Second Circuit Local Rule 27.2, we may certify questions of New

York law to the New York Court of Appeals.  Certified questions must be

"determinative questions" that are "involved in a case pending before [us] for

which no controlling precedent of the Court of Appeals exists."  N.Y. Comp.

Codes R. & Regs. tit. 22, § 500.27(a); see also N.Y. Const. Art. 6, § 3(b)(9).  Before

certifying such a question, we must answer three others: "(1) whether the New

York Court of Appeals has addressed the issue and, if not, whether the decisions

of other New York courts permit us to predict how the Court of Appeals would

resolve it; (2) whether the question is of importance to the state and may require

value judgments and public policy choices; and (3) whether the certified question

is determinative of a claim before us."  Barenboim v. Starbucks Corp., 698 F.3d

104, 109 (2d Cir. 2012).  In this case, we answer each question in favor of

certification.

First, the New York Court of Appeals has not decided the question before

us.  Neither party identifies a decision of that court applying the unfinished

business doctrine to law firms in either the contingency-fee context or in the

context of hourly-fee matters,[14] and our own research has located no such

decision. While there are sound reasons for extending the doctrine to hourly fee

matters, there are also sound reasons for declining to extend the doctrine. We are

mindful that "any ruling we might make on this state law question would not be

binding on New York state courts and thus has the potential for sowing

confusion." Osterweil v. Bartlett, 706 F.3d 139, 143 (2d Cir. 2013). Such a result is

entirely unnecessary when the New York Court of Appeals "stand[s] willing to

address questions of state law on certification from a federal court." Id. at 142

(internal quotation marks omitted).

Second, the question certainly "is of importance to the state" and is the

type of question that "may require value judgments and public policy choices."

Barenboim, 698 F.3d at 109. The practical importance of the question cannot be

doubted: the bankruptcy of major law firms is, sadly, a phenomenon that has

occurred with distressing frequency in recent years. At least two such

bankruptcies are now pending in the Southern District of New York, and there

---

[14] See Santalucia, 232 F.3d at 297 ("To date, the New York Court of Appeals has not addressed the more specific issue of when and to what extent a lawyer has a fiduciary duty to account to a dissolved firm for the contingent fee cases that he took with him.").

will almost certainly be more.[15]  The pursuit of pending hourly-fee matters as

assets of the estate has become a recurring feature of these bankruptcies.  The

practice of law is a significant business in any jurisdiction, and is especially so in

New York, which attracts national and international business to its major law

firms.  Moreover, as the canvass of arguments above makes plain, the resolution

of the issue potentially affects not merely the distribution of funds among former

members of partnerships, but also the ability of lawyers to continue to practice

their profession, and of clients to have their matters adequately serviced by

counsel of their choice.  And as that canvass also demonstrates, the resolution of

the issue is not clearly determined by statutory text or established precedent and

involves values and policies best addressed by the state courts.

Finally, the state-law question is dispositive of the case before us.  The

Trustee seeks to reclaim certain profits earned by Seyfarth.  Specifically, the

Trustee contends that hourly matters transferred to that firm by former Thelen

partners constitute unfinished business that, prior to the adoption of the

---

[15] See, Harris, supra note 11 ("The structural fault lines inherent in the law firm model, coupled with extreme market shifts, could send several more large firms to the edge of oblivion, giving new shape to the changeless and storied legal industry.").

24

Unfinished Business Waiver in the Fourth Partnership Agreement, were assets of the partnership, fraudulently conveyed by that Agreement to the individual partners when the firm was already insolvent. If that theory is correct, the Trustee's case goes forward and Seyfarth will have to account for such profits, at least some of which will likely be recovered. If it is not, the case is over and the Trustee's claims must be dismissed.

In short, certification is appropriate, because it is "our preference that states determine the meaning of their own laws in the first instance." <u>Joseph v. Athanasopoulos</u>, 648 F.3d 58, 68 (2d Cir. 2011).

## CONCLUSION

For the foregoing reasons, we conclude that certification is appropriate, and therefore certify the following questions to the New York Court of Appeals:

> Under New York law, is a client matter that is billed on an hourly basis the property of a law firm, such that, upon dissolution and in related bankruptcy proceedings, the law firm is entitled to the profit earned on such matters as the "unfinished business" of the firm?
>
> If so, how does New York law define a "client matter" for purposes of the unfinished business doctrine and what proportion of the profit derived from an ongoing hourly matter may the new law firm retain?

25

The New York Court of Appeals may, of course, expand, alter, or reformulate those questions as it deems appropriate.  See Kirschner v. KPMG LLP, 590 F.3d 186, 195 (2d Cir. 2009).

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court.  This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification.  It is further ORDERED that the parties bear equally any fees and costs that may be imposed by the New York Court of Appeals.

## CERTIFICATE

The following questions are hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule 27.2 and New York Compilation of Codes, Rules, and Regulations, title 22, section 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit:

> Under New York law, is a client matter that is billed on an hourly basis the property of a law firm, such that, upon dissolution and in related bankruptcy proceedings, the law firm is entitled to the profit earned

26

on such matters as the "unfinished business" of the firm?

If so, how does New York law define a "client matter" for purposes of the unfinished business doctrine and what proportion of the profit derived from an ongoing hourly matter may the new law firm retain?