1301 Properties Owner LP, Plaintiff,

against
Philip Abelson, et al., Defendants.


653342/2013

Rosenberg & Estis, P.C., New York City (Warren A. Estis, Howard W. Kingsley, Marc A. Rogovin) for plaintiff 1301 Properties Owner LP.
Kornstein Veisz Wexler & Pollard LLP, New York City (Daniel J. Kornstein and Kevin J. Fee) and Mango & Iacoviello, LLP (Rocco Iacoviello and Anthony G. Mango) for defendants identified as "the 44 Moving Defendants."
Schulte Roth & Zabel LLP, New York City (Robert M. Abrahams and Marguerite E. Gardiner) for defendants identified as "the Schulte Group defendants."
Foley & Lardner LLP, New York City (Peter N. Wang, Robert A. Scher, Douglas S. Heffer) for defendants identified as "the Foley Group defendants."
Covington & Burling LLP, New York City (Robert P. Haney and Kristen E. Grauer) for defendants identified as "the Covington Group defendants."
Betty M. Shumener and Robert J. Odson, defendants pro se.
Michael O'Hara Duff, defendant pro se.
David S. McLeod and Jeffrey R. Witham, defendants pro se.
Ilan S. Nissan and Christian C. Nugent, defendants pro se.
Elizabeth B. Sandza, defendant pro se.
Joseph K. Dowley, defendant pro se.
Christopher J. Clark and Stephen A. Best, defendants pro se.
Paul J. Bschorr, defendant pro se.
Martha J. Talley, defendant pro se.
Lawrence M. Sung, defendant pro se.
Clark E. Walter, defendant pro se.
Sean Moran and Donald F. Woods Jr., defendants pro se.
Bennett J. Murphy, defendant pro se.
Stephen H. Davis, defendant pro se.


Saliann Scarpulla, J.

The following papers, numbered 1 to, were read on this motion todismiss
Notice of Motion/ Petition/ OSC - Affidavits - Exhibits No(s)
Answering Affidavits - Exhibits No(s)
Replying Affidavits No(s)
Upon the foregoing papers, it is
ORDERED that attached memorandum decision and order dated ______ disposes of motion sequences 002, 003, and 006 - 022.
On May 28, 2012, the law firm of Dewey & LeBoeuf LLP ("Dewey & LeBoeuf") filed for bankruptcy. At the time of the bankruptcy filing, Dewey & LeBoeuf was the tenant under a long-term lease for office space at 1301 Avenue of the Americas, New York, New York. In light of its inability to be repaid fully the amounts due under the lease as a creditor in the bankruptcy proceeding, Dewey & LeBoeuf's landlord, Plaintiff 1301 Properties Owner LP ("Plaintiff") commenced [*2]this action to hold not only Dewey & LeBoeuf partners, but also former partners of predecessor partnerships, personally liable for current and future lease payments due under the lease.
Plaintiff originally sued four hundred and twenty six Dewey & LeBoeuf partners and former partners of predecessor partnerships. Since the commencement of the action, Plaintiff has discontinued against some of the defendants, so that currently, three hundred and seventy seven defendants remain.
Background
Dewey, Ballantine, Bushby, Palmer & Wood ("DBBPW") and Tishman Speyer Trammell Crow Limited Partnership ("Tishman Speyer") are the original parties to the lease at issue, which was executed on December 8, 1989. The tenant DBBPW was a law firm formed as a New York general partnership, and Tishman Speyer served as landlord. 


In lieu of a security deposit, the original lease provided that: (a) partners of DBBPW's successors or assigns would be personally liable for the lease in the event of breach; and (b) DBBPW would be required to demonstrate its creditworthiness by submitting an annual financial certification to Tishman Speyer. Although the lease stated that partners of DBBPW's successors would be personally liable, the original lease also contained a "non-recourse provision" that limited liability for partners of DBBPW. The lease further allowed successor partners who retired or withdrew from the partnership to be released from personal liability upon satisfaction of certain conditions.
The lease remained in effect from 1989 until May 25, 2012, when Plaintiff terminated the lease. During the two decades that the lease was effective, several relevant events occurred: the parties to the lease changed, the terms of the lease were amended twelve times, and the New York Legislature amended the Partnership Law to permit the organization of registered limited liability partnerships. 


Of particular importance were changes to the tenant entity that occupied the leased premises, which in sequence were DBBPW, Dewey Ballantine, Dewey Ballantine LLP, and Dewey & LeBoeuf LLP. The changes in tenancy resulted from DBBPW's name change to Dewey Ballantine; Dewey Ballantine's conversion to a limited liability partnership Dewey Ballantine LLP in 1997; and Dewey Ballantine LLP's combination with LeBoeuf Lamb LLP to form Dewey & LeBoeuf LLP in 2007.
Plaintiff alleges that, due to Dewey & LeBoeuf's failure to pay outstanding rent, the partners of Dewey & LeBoeuf and former tenant Dewey Ballantine LLP [*3]are personally liable for the lease.[FN1]
Plaintiff asserts that Section 29.1 of the lease imposes personally liability on the partners of Dewey Ballantine LLP and Dewey & LeBoeuf for the amounts due on the lease and for attorney's fees.[FN2]

Before me are nineteen separate motions to dismiss filed by various groups of defendants. The defendants fall primarily into two groups, Dewey Ballantine LLP partners and Dewey & LeBoeuf LLP partners. In moving to dismiss the complaint, the defendants set forth three main arguments: (1) the partners of Dewey Ballantine LLP are not personally liable because they are protected by the non-recourse provision in the lease; (2) certain partners of Dewey Ballantine LLP that retired or withdrew from the firm were released from liability pursuant to Section 29.1(b) of the lease; and (3) the partners of Dewey Ballantine LLP and Dewey & LeBoeuf are not personally liable for the lease because the parties failed to comply with New York Partnership Law § 26(d), which requires a majority agreement to impose personal liability upon partners, unless otherwise agreed. Several defendants further move to dismiss the complaint on other grounds, including lack of personal jurisdiction and statute of limitations.
Discussion
A. The First Cause of Action for Breach of Contract
In its amended complaint, Plaintiff seeks to impose personal liability on defendants for breach of contract pursuant to Section 29.1 of the lease. Section 29.1(a) of the lease provides that partners of "Tenant" are personally liable for the lease. Specifically, lease states that "[i]f Tenant is a partnership . . . ["Partnership Tenant"] or if Tenant's interest in this Lease shall be assigned to a partnership . . . (i) the liability of each of the parties comprising Partnership Tenant shall be joint and several, subject to the provisions of this Article 29; [and] (ii) each of the [*4]parties comprising Partnership Tenant hereby consents in advance to, and agrees to be bound by (x) any written instrument which may hereafter be executed by Partnership Tenant or any successor partnership, changing, modifying, extending or discharging this Lease, in whole or in part . . ." The term "Tenant" encompasses the "Original Tenant, its successors and assigns."
The defendants argue that Plaintiff's breach of contract claim predicated on this provision of the lease should be dismissed pursuant to the non-recourse provision in the lease, the release provisions in the lease, and Partnership Law § 26(d).

1. The Non-Recourse Provision
The defendants first argue that the Dewey Ballantine LLP partners are not personally liable for the lease because they have limited liability pursuant to the non-recourse provision in the lease. Plaintiff disagrees and contends that the non-recourse provision does not apply to Dewey Ballantine LLP partners.
While the lease appears to suggest that partners of "Original Tenant" shall be held personally liable (because Original Tenant falls within the definition of Tenant), the lease goes on to provide that partners of "Original Tenant" have limited liability under the non-recourse provision. The non-recourse provision — which appears in Section 29.2 of the lease — states that: "Original Tenant's liability . . . shall be limited to the assets of Original Tenant . . . and Landlord shall look solely to such assets . . . for the recovery of any judgment against Original Tenant arising out of . . . the failure to perform the obligations of Tenant under this Lease."

Under the plain terms of the lease, for the Dewey Ballantine LLP partners to be limited from personal liability by the non-recourse provision, they must be partners of the "Original Tenant." The lease defines "Original Tenant" as "the firm presently known as Dewey, Ballantine, Bushby, Palmer and Wood, a New York partnership, as the same may be reconstituted in connection with the admission of new Partners . . . or the reorganization of Tenant into a professional corporation." To fall within the definition of "Original Tenant," Dewey Ballantine LLP must either be a reconstitution of the general partnership DPPBW, or a reorganization of the partnership into a professional corporation. Dewey Ballantine LLP is neither because it is a registered limited liability partnership, not a continuation of the New York partnership DBBPW or a reorganization into a professional corporation. 
That Dewey Ballantine LLP is a "Tenant" and not an "Original Tenant" is further evidenced by the contractual language found in the amendments to the lease. All eight amendments executed by Dewey Ballantine LLP expressly refer to the firm simply as "Tenant." In addition, when the parties amended Section [*5]29.3 of the lease through the Eighth Amendment, they expressly agreed that "Tenant" shall mean "Original Tenant and Dewey Ballantine LLP" within that section. Together, the lease and its amendments reveal that the parties distinguished Dewey Ballantine LLP from the Original Tenant, and therefore partners of Dewey Ballantine LLP may not rely on the non-recourse provision, which solely applies to the partners of "Original Tenant." Westmoreland Coal Co. v. Entech, Inc., 100 NY2d 352, 358 (2003) (noting a contract should "be read as a whole, and every part will be interpreted with reference to the whole"). Accordingly, I deny the defendants' motions to dismiss the breach of contract claim based on the non-recourse provision.
2. The Release Provisions for Retired or Withdrawn Partners
Next, the defendants argue that the complaint should be dismissed against any partner that retired or withdrew from Dewey Ballantine LLP before September 30, 2007. The defendants assert that these partners were released from liability pursuant Section 29.1(b) of the lease.

Section 29.1(b) states that "[i]f a Partner shall retire or die or become permanently disabled or incompetent, such Partner and his estate shall be released, as of the date of such retirement, death, permanent disability or incompetency, from any liability thereafter accruing hereunder." This section further states that "[i]f a Partner shall otherwise withdraw, such Partner shall be released, as of the date of such withdrawal, from any liability thereafter accruing hereunder, when . . . Tenant shall thereafter have delivered a Financial Certification evidencing compliance with the Revenue Requirement."
Plaintiff contends that the lease only releases partners who have "permanently" retired from the practice of law, and not partners who simply retired from Dewey Ballantine LLP. [FN3]
The plain language of the lease, however, makes clear that partners who retired from Dewey Ballantine LLP are released from liability "as of the date of such retirement." Contrary to Plaintiff's assertion, Section 29.1(b) of the lease plainly does not require permanent retirement. The term "permanent" is used in that section to modify the terms "disability" and "incompetency," and not "retirement."

Plaintiff next argues that partners who withdrew from Dewey Ballantine LLP prior to September 30, 2007 have not been released because Dewey Ballantine LLP failed to deliver proper financial certifications for 2006 and 2007 as required by Section 29.1(b). Plaintiff asserts that the financial certifications delivered by Dewey Ballantine LLP were not in the form required by the lease and were [*6]improperly served by email.
Section 29.3 sets forth the financial certification requirements that the Tenant —here Dewey Ballantine LLP — must meet in order for withdrawing partners to be released from liability. This section provides that "Tenant shall deliver to Landlord a statement (addressed to Landlord and Tenant), in the form of Exhibit D annexed hereto and made a part hereof, of Price Waterhouse or a firm of independent certified public accountants selected by Tenant and approved by Landlord. . . and a statement sworn to as true and complete by the Administrative Partner or any other Partner serving on the management committee each stating that the gross revenues for Tenant's preceding fiscal year . . . meet the Revenue Requirement (such statements being referred to as the Financial Certification')."[FN4]

To demonstrate that Dewey Ballantine LLP submitted the requisite financial certifications for 2006 and 2007, the defendants submit two emails sent by Thomas Mullikin of Dewey Ballantine LLP to Equity Office Properties Trust on January 24, 2006 and March 21, 2007. Each email contained a "Report of Independent Auditors Relating to the 1301 Avenue of the Americas Lease" for the prior fiscal year signed by PricewaterhouseCoopers LLP. Each of these reports conformed to the form of Exhibit D to the lease and stated that the firm met the revenue requirements as required by Section 29.3.[FN5]

Plaintiff now claims that the above financial certifications do not conform to the requirements of the lease. I find that Plaintiff is equitably estopped as a matter of law from raising any objections to the form of the financial certifications or how they were served. Equitable estoppel is applied by courts "to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted." Shondel J. v. Mark D., 7 NY3d 320, 326 [*7](2006). Here, Plaintiff failed to raise any objection to the financial certifications until this action was commenced, more than nine years after the documents were submitted by Dewey Ballantine LLP, and only in response to these motions to dismiss. As a result of Plaintiff's failure to raise its objections until now, the defendants who withdrew from Dewey Ballantine LLP formed a reasonable belief that the financial certifications were satisfactory. It would be manifestly unfair and highly prejudicial to these defendants to allow Plaintiff to raise its objections now, as these defendants have lost the opportunity to correct any defects in the financial certifications in order to be released, and may not seek any recourse against Dewey Ballantine LLP, which was dissolved in 2009.
Plaintiff's assertion that it cannot be estopped from claiming defects in the financial certifications because a non-waiver clause exists in the lease is misplaced. The presence of a non-waiver clause does not preclude a contract from being "effectively modified by actual performance and the parties' course of conduct." Aiello v. Burns Intl. Sec. Servs. Corp., 110 AD3d 234, 245 (1st Dep't 2013); UrbanAmerica, L.P. II v. Carl Williams Group, L.L.C., 95 AD3d 642, 645 (1st Dep't 2012). Here, the non-waiver clause does not preclude the finding that Plaintiff is estopped from raising objections to the adequacy of the financial certifications.
For the above reasons, the defendants who retired from Dewey Ballantine LLP or withdrew from Dewey Ballantine LLP prior to September 30, 2007 are released from liability pursuant to Section 29.1(b) of the lease, and the complaint is dismissed against them.
3. New York Partnership Law § 26(b)
In 1994, the New York Legislature amended the Partnership Law to authorize the formation of registered limited liability partnerships for certain professionals, including attorneys.[FN6]
As the name of the entity indicates, the essential feature of a limited liability partnership is limited liability protection for partners. Ederer v. Gursky, 9 NY3d 514, 523 (2007) (noting that New York's limited liability partnership legislation "eliminated the vicarious liability of a general partner"). Partnership Law § 26(b) expressly states that no partner of a registered limited liability partnership is liable for any debts of the partnership that "are incurred, created or assumed by such partnership . . . solely by reason of being such a partner." 


The Partnership Law, however, also provides a mechanism by which partners of an LLP may waive their liability protection and undertake personal liability for the partnership's debts. Specifically, Partnership Law § 26(d) provides that partners of a limited liability partnership "may be liable in their capacity as [*8]partners for all or specified debts, obligations or liabilities of a registered limited liability partnership to the extent at least a majority of the partners shall have agreed unless otherwise provided in any agreement between the partners" (emphasis added).
The defendants contend here that they cannot be held personally liable for the lease because no majority agreement exists between the partners of Dewey Ballantine LLP or Dewey & LeBoeuf to lift the liability protection provided by the LLP form. Plaintiff does not allege that any majority agreement exists, but claims that the lease agreement itself is sufficient to subject the defendants to personal liability.
The contractual history of the lease is relevant to this issue. As previously summarized above, in 1989, the original contracting parties — DPPBW and Tishman Speyer — agreed that in lieu of a security deposit, partners of DBBPW's successors or assigns would be personally liable in the event of breach, and DBBPW would be required to submit an annual financial certification. The lease thus reflected, at least for partners of DBBPW's successors, the standard liability scheme of a general partnership — that "general partners are jointly and severally liable to nonpartner creditors." Ederer, 9 NY3d at 522-23.
Since 1989, the lease underwent twelve amendments, two changes in the landlord entity, and four changes in the named tenant. Soon after the lease was executed, DBBPW was renamed to Dewey Ballantine. In 1997, Dewey Ballantine converted from a general partnership to a limited liability partnership Dewey Ballantine LLP.[FN7]
Thereafter, Dewey Ballantine LLP remained the Tenant of the premises for the next ten years, until Dewey & LeBoeuf LLP acquired the lease in 2008.[FN8]

Despite Dewey Ballantine's conversion to a limited liability partnership in 1997, the parties did not alter the personal liability framework established by the [*9]original lease. Therefore, Section 29.1(a) continued to state that "the liability of each of the parties comprising Partnership Tenant shall be joint and several." Plaintiff asserts that this ongoing provision evidences the parties' intent to impose personal liability on the partners of "Tenant," and overrides any legal effect of Dewey Ballantine's conversion to a limited liability partnership.
There is no doubt that the lease language — drafted in 1989, prior to the passage of the LLP statute — sought to impose personal liability on the partners of "Tenant." The lease provided that all new partners admitted to the partnership "shall, by their admission . . . be deemed to have assumed joint and several liability" under the lease, and that this personal liability would not be vitiated, even in the absence of an agreement by the individual partners. It is clear from this language that the contracting parties sought to personally bind, in advance and without notice, the individual partners of "Tenant."
However, the agreement by the original contracting parties to impose personal liability on the general partners of Tenant, DBBPW's successors, is unenforceable as against the limited liability partners of Dewey Ballantine LLP and Dewey & LeBoeuf LLP because the successor parties failed to comply with the procedure set forth in Partnership Law § 26(d).
The overriding purpose of the Limited Liability Partnership Law is to limit the individual liability of partners in this form of entity. The New York Legislature made clear, in enacting § 26(d), that to impose personal liability on the partners of a limited liability partnership, who would otherwise enjoy the statutory benefit of limited liability, a majority or other agreement between the partners is required. Partnership Law § 26(d) sets forth a statutory procedure for imposing personal liability on partners of an LLP, not merely a default rule that parties may contract around. This statute is designed to safeguard partners and provide them with fair notice of the circumstances under which they will be held personally liable for the partnership's debts, against their ordinary and reasonable expectation that they are otherwise protected from personal liability as partners of an LLP.
Plaintiff argues that the defendants should be held personally liable because the lease pre-dates the existence of limited liability partnerships in New York. While there may have been a reasonable time period following Dewey Ballantine's conversion to a limited liability partnership during which the parties may have continued to rely on the personal liability provisions in the lease, that time period has long since elapsed. After Dewey Ballantine's conversion to a limited liability partnership in 1997, the contracting parties had ample opportunity to update the lease and comply with Partnership Law § 26 by securing a majority or other agreement among the partners to be held personally liable. [FN9]
The [*10]contracting parties, however, failed to do so, even in the fifteen intervening years after the LLP law went into effect. To enforce their agreement now and impose personal liability upon the defendants would be directly contrary to, and defeat the purpose of Partnership Law § 26 (d).
Sophisticated parties — such as the contracting parties here — are under a continuing legal obligation to ensure that their contracts comply with New York law. For example, it is well-settled that parties contracting with corporations must undertake certain contractual formalities to impose personal liability on a corporation's officers or stockholders. Salzman Sign Co. v. Beck, 10 NY2d 63, 67 (1961) (noting that "[i]n modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice — once as an officer and again as an individual"); American Media Concepts v. Atkins Pictures, Inc., 179 AD2d 446, 448 (1st Dep't 1992).
Similarly, parties contracting with LLPs must ensure that their contracts seeking to impose personal liability on partners comply with the Partnership Law. The individual partners of an LLP have a legitimate expectation that they are protected from personal liability, unless they agree to the contrary through a majority agreement among the partners. Here, the contracting parties could not have reasonably expected that the lease would continue to impose personal liability on the partners of an LLP, without compliance with the statutory requirements set forth in Partnership Law §26(d). 
Accordingly, I find that the lease is not enforceable to hold the individual partners of Dewey Ballantine LLP and Dewey & LeBoeuf LLP personally liable for the lease due to the contracting parties' failure to comply with Partnership Law § 26(d). I therefore grant the remaining defendants' motions to dismiss the first cause of action for breach of contract.[FN10]

B. Second Cause of Action for Attorney's Fees
In the second cause of action, Plaintiff seeks attorney's fees pursuant to Section 18.1(a) of the lease. In accordance with my decision to dismiss the breach of contract claim against the defendants, I dismiss the second cause of action for attorney's fees. Plaintiff may not hold the defendants personally liable [*11]for attorney's fees provided for in the lease.
Defendants' Motions for Sanctions and Attorney's Fees

Defendants Betty Shumener and Robert Odson move for monetary sanctions against Plaintiff (motion seq. 003). Shumener and Odson argue that the original complaint misidentified them as partners of Dewey & LeBoeuf, and that Plaintiff refused to dismiss this action against them even after they notified Plaintiff of this fact. They further argue that, in order to keep them in the lawsuit, Plaintiff later amended the definition of "Tenant" in the complaint to include DBBPW, Dewey Ballantine, and Dewey Ballantine LLP.
Section 130-1.1 of the Codes, Rules and Regulations of New York provides, in relevant part, that the court "may award to any party or attorney in any civil action . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct." Conduct is considered frivolous if it is completely without merit or undertaken to primarily harass another party. Based on the allegations in the complaint, this action cannot be characterized as completely without merit or undertaken for the primary purpose of harassment. The defendants' motion for sanctions is therefore denied.
In conjunction with their motion to dismiss, the Kornstein defendants move for attorney's fees (motion seq. 006). This motion is denied because the defendants fail to set forth any basis for an award of attorney's fees.
In accordance with the foregoing, it is

ORDERED that the motion to dismiss the complaint filed by defendants Betty M. Shumener and Robert J. Odson's (motion seq. 002) is granted; and it is further
ORDERED that defendants Betty M. Shumener and Robert J. Odson's motion for monetary sanctions against plaintiff 1301 Properties Owner LP (motion seq. 003) is denied; and it is further
ORDERED that the motion to the dismiss the complaint and for attorney's fees filed by "the 44 Moving Defendants" through their attorneys Kornstein Veisz Wexler & Pollard LLP (motion seq. 006) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Michael O'Hara Duff (motion seq. 007) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by "the Schulte Group defendants" through their attorneys Schulte Roth & Zabel (motion seq. 008) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by David S. McLeod and Jeffrey R. Witham (motion seq. 010) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Ilan S. Nissan and Christian C. Nugent (motion seq. 011) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Elizabeth B. Sandza (motion seq. 012) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Joseph K. Dowley (motion seq. 013) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by "the Covington Group defendants" through their attorneys Covington & Burling LLP (motion seq. 014) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by defendants Christopher J. Clark and Stephen A. Best (motion seq. 015) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by defendant Paul J. Bschorr (motion seq. 016) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by defendant Martha J. Talley (motion seq. 017) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by defendant Lawrence M. Sung (motion seq. 018) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by defendant Clark E. Walter (motion seq. 019) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Sean Moran and Donald F. Woods Jr. (motion seq. 020) is granted; and it is further
ORDERED that the motion to the dismiss the complaint filed by Bennett J. Murphy (motion seq. 021) is granted for the reasons stated on the record on January 22, 2015, and in accordance with this memorandum decision; and it is further
ORDERED that the motion to the dismiss the complaint filed by Stephen H. Davis (motion seq. 022) is granted; and it is further
ORDERED that the application to the dismiss the complaint filed by Jeff E. Schwartz (document no. 160) is granted; and it is further
ORDERED that the Clerk is directed to enter judgment in favor of the above defendants; and it is further
ORDERED that counsel for plaintiff and the remaining defendants are directed to appear for a status conference at 60 Centre Street, Room 208, on May 4, 2016 at 2:15pm.
This constitutes the decision and order of the Court.
DATE: April 1, 2016 SCARPULLA, SALIANN, JSC



Footnotes

Footnote 1:In the amended complaint, Plaintiff originally alleged that the partners of DBBPW and Dewey Ballantine were also personally liable for the lease. At oral argument, Plaintiff conceded that partners of DBBPW and Dewey Ballantine are protected by the non-recourse provision because they are partners of "Original Tenant." Transcript, January 22, 2015, p. 39-40. Accordingly, to the extent that any of the remaining defendants were solely partners of DBBPW or Dewey Ballantine, the complaint is dismissed against them pursuant to the non-recourse provision of the original lease.
Footnote 2:Plaintiff alleges that Dewey & LeBoeuf paid $78,912.86 on the outstanding amount due pursuant to a court order in Dewey & LeBoeuf's bankruptcy proceeding. As to the current status of the leased premises, the "Foley Group Defendants" assert that Plaintiff has "found a new tenant to occupy a large portion of the space at a significant premium over what D & L LLP [Dewey & LeBoeuf] was paying."
Footnote 3:In fact, Plaintiff has agreed to discontinue this action against any defendant who demonstrates that he or she has permanently retired from the practice of law or was never a partner of Dewey Ballantine LLP or Dewey & LeBoeuf.

Footnote 4:The original lease defined "Revenue Requirement" to mean "gross revenues for the fiscal year in question . . . of not less than the product of five (5) times the Fixed Rent payable hereunder." In 2003, the Eighth Amendment modified the "Revenue Requirement" to require gross revenues of not less than six times the Fixed Rent.
Footnote 5:Despite Plaintiff's claim to the contrary, these emails qualify as documentary evidence because their content is "essentially undeniable." Amsterdam Hospitality Group, LLC v. Marshall-Alan Assoc., Inc., 120 AD3d 431, 432 (1st Dep't 2014) (internal quotation marks and citation omitted). Defendants averred that the two emails were retrieved from the firm's email box by counsel for the trustee in Dewey & LeBoeuf's bankruptcy case, and the defendants further submitted an affidavit from Peter Kaplan of PricewaterhouseCoopers attesting that the reports were created and maintained by his firm. In response, Plaintiff fails to raise any issue as to the authenticity of the documents.

Footnote 6:The limited liability legislation was enacted as a rider to the New York Limited Liability Company Law.

Footnote 7:To convert from a partnership to a limited liability partnership, the entity was required to file a registration statement, but no amendment to the entity's partnership agreement was required. 1 NY Prac., New York Limited Liab Companies and Partnerships § 14:7 (noting that "an election to become an LLP does not require the adoption of a new governing agreement (although amendments to a firm's existing partnership agreement may be appropriate to reflect the changed relationship among the partners resulting from the absence of certain personal liability")).
Footnote 8:The parties disagree as to whether the lease was transferred to Dewey & LeBoeuf through an amendment to the lease or through a separate assignment. However, it is undisputed that Dewey & LeBoeuf was identified as the named tenant and "successor to Dewey Ballantine" in the Twelfth Amendment dated August 29, 2008.
Footnote 9:During the ten years that Dewey Ballantine LLP was tenant, the lease underwent eight separate amendments. Only one of these amendments — the Eighth Amendment dated October 8, 2003 — modified Article 29 of the lease containing the partner liability provision. However, the modification did not concern partner liability but instead primarily made changes to the tenant's financial certification and revenue requirements.

Footnote 10:The defendants raised various other grounds for dismissal. I do not address those grounds in this decision because the parties' failure to comply with Partnership Law § 26(d) is dispositive of this action.